[Cite as *State v. Dotson*, 2017-Ohio-5565.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 2016CA00199 |
| | : | |
| ANTONIO R. DOTSON | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No.
                             2016CR1126B

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      June 26, 2017

APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

JOHN D. FERRERO, JR.                    DEREK LOWRY
STARK CO. PROSECUTOR                    CRAWFORD, LOWRY & ASSOC.
KRISTINE W. BEARD                       116 Cleveland Ave. NW, Ste. 800
110 Central Plaza South, Ste. 510       Canton, OH 44702-1732
Canton, OH 44702-1413

*Delaney, P.J.*

{¶1} Appellant Antonio R. Dotson appeals from the September 28, 2016 Judgment Entry of the Stark County Court of Common Pleas. Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2} This case arose on May 2, 2016, when Jane Doe attempted to sell a PlayStation 4 and accessories on "Letgo," an app similar to an online classified advertisement. Jane Doe posted photos of the PlayStation 4, controllers, and games on Letgo with an asking price of $400. The app shows potential buyers the location of the items for sale; in this case, Doe was selling the PlayStation from her home in southeast Canton.

{¶3} Very shortly after she posted the photos, Doe received an inquiry on the app from "Pockets W." stating he wanted to buy the items and needed a few minutes to stop at a bank before he would be in her neighborhood to pick them up. Doe gave "Pockets W." her boyfriend's phone number so she would not have to communicate with the buyer herself. The boyfriend arranged for "Pockets W." to pick up the PlayStation at the couple's home between 3:30 and 4:00 p.m. that day.

{¶4} Around that time, the boyfriend received a phone call stating the buyer was in the neighborhood but couldn't find the house. Doe and her boyfriend looked outside and saw a purple Dodge Neon driving slowly in the cul-de-sac. The buyer confirmed he was in the purple Neon. The car parked down the street, around the corner, and a passenger in the car, later identified as Ryan Thomas, got out. The boyfriend waved to him and Thomas came into the house.

{¶5}   Doe's boyfriend showed Thomas the PlayStation, games, and accessories and began to pack it up.  Thomas said he had to use the bathroom and briefly went back outside.  He returned inside the house and Doe's boyfriend offered him the PlayStation's original box.  Thomas said he preferred a bag.

{¶6}   Doe's boyfriend handed over a bag containing the items and Thomas handed him a bank envelope that appeared to contain cash.  Doe told her boyfriend to count the money, and Thomas dropped the envelope.  Thomas grabbed the bag with both hands and ran out the door.  Both Doe and her boyfriend pursued him, going in separate directions.

{¶7}   Doe observed Thomas running toward the purple Neon which was already approaching from down the street.  Thomas jumped into the back seat of the car and Doe found herself in the car's path.  The driver bumped her in the leg with the car, and Doe "looked him dead in his face" and said, "You just [expletive] hit me."  Doe saw the driver's face clearly; he looked at her calmly, didn't say a word, and drove off when she stepped away from the car.  Doe identified appellant as the driver of the purple Neon.

{¶8}   Doe and her boyfriend returned to the house and called 911.  The boyfriend had the buyer's phone number on his cell phone, and he typed the phone number into Facebook.  Up popped a photo and profile of "Pockets Wattzup," including a photo Doe identified as the man driving the purple Neon.  Appellant is "Pockets Wattzup."

{¶9}   Doe and her boyfriend spoke with police and provided them with the cell phone number of "Pockets Wattzup."  Police photographed bruising to Doe's knee where she was struck by the car.  Police also collected the bank envelope of "cash," which was

in fact $400 in fake bills marked "for motion picture use only." This was referred to at trial as "funny money."

{¶10} Doe and her boyfriend posted about the incident on a community crimewatch site on social media, asking if anyone knew the identity of "Pockets Wattzup." Someone with the profile of "Pockets Wattzup" responded to the posts on the site, claiming he had nothing to do with the robbery; he just gave someone a ride, having no idea a robbery would occur.

{¶11} Detective Darrell Pierson investigated Jane Doe's report and called the phone number provided on the boyfriend's cell phone. Appellant returned Pierson's call and said he had no involvement in the incident, again claiming he only gave someone a ride for gas money. Appellant's call to Pierson originated from the same number provided by the boyfriend as the number of "Pockets Wattzup," the buyer who initiated the Letgo transaction. Pierson told appellant he needed to provide the name of the person he gave a ride to, and appellant called back with the name of Ryan Thomas. At trial, Pierson stated he further investigated the profile of "Pockets Wattzup" on social media and "Pockets Wattzup" is appellant.

{¶12} Ryan Thomas was called as a reluctant witness by appellee. He testified he entered guilty pleas to complicity to robbery, complicity to forgery, and petty theft, and was sentenced to a prison term of 4 years with the possibility of judicial release in six months. He denied the existence of any "deal" in exchange for his testimony. Thomas testified he knows appellant as "Pockets," and the two were "kicking it" when Pockets suggested that they buy a PlayStation 4 with funny money. Pockets drove Thomas to Jane Doe's house in a purple Neon and gave him an envelope of funny money.

{¶13} Thomas claimed, though, that he walked into the house, handed over the envelope, and walked back out with the PlayStation in a bag. He denied that any confrontation occurred in the house and denied that he was chased out of the house by Jane Doe and her boyfriend. Thomas stated he had to call Pockets to return to the address to pick him up and waited several minutes for Pockets to pull up in the purple Neon outside the house. He further testified that Jane Doe ran up and stood near the car for a moment, demanding her items back, then she moved and they drove off. Thomas denied that appellant struck Doe with the car.

{¶14} Thomas said he told appellant to let him out of the car and he never saw appellant again. He didn't know what became of the PlayStation and no one gave him any money or other payment from the incident. He didn't know where the funny money came from but at the time this occurred, "everybody around Canton was coming into it" and appellant provided it.

{¶15} Appellant testified on his own behalf at trial, against the advice of defense trial counsel and after warning by the trial court. Appellant's prolonged run-on testimony is confusing. Appellant said he is "Pockets Wattzup," but denied that he initiated the transaction to purchase the PlayStation 4 from Jane Doe. He denied giving Thomas the funny money. Appellant said his cell phone was a pay-as-you-go phone from Wal-Mart which "came up missing," implying Thomas or an associate stole the phone. He denied typing any of the Letgo conversations with Jane Doe about the transaction and denied any knowledge of the agreement to purchase the PlayStation. He implied Thomas or the associate initiated the Letgo transaction on the phone they stole from him, using his profile.

{¶16} Appellant said he provides jitney service in exchange for gas money and on May 2, an associate called to ask him for a ride on behalf of Ryan Thomas. Appellant picked Thomas up, driving his girlfriend's purple Neon. Thomas was carrying a black bag at the time. A girl came up to the car but appellant testified "he" approached the car in a threatening manner and appellant thought he might get shot at, so he drove away. It is unclear whether he felt threatened by Jane Doe or her boyfriend.

{¶17} Appellant dropped Thomas off near the Hall of Fame and Thomas never gave him any gas money. Appellant let the matter drop, however, because he felt there was a "whole bunch of b.s. going on." Appellant's suspicions about the situation led him to check the Canton Repository website, where he read comments about the incident accusing him of initiating a robbery. Appellant said he responded to the comments to say the story was not true, leading him to call Jane Doe's boyfriend to ask what was going on and how he could "settle" it. The boyfriend told appellant "his dude" stole his PlayStation 4 and appellant denied knowledge of the theft or the funny money. At some point appellant told the boyfriend he would pay him back via Facebook Messenger.

{¶18} Appellant also called the Canton police in an effort to clear his name and was connected with Detective Pierson. Appellant said he didn't know Thomas' last name at first so he had to go back on Facebook to ask around, but he called Pierson with the name once he knew it. He has seen the funny money at a carwash where he sometimes works but did not provide any to Thomas. Appellant insisted whomever has possession of his phone used his social media profile and accounts to initiate the transaction with Jane Doe.

{¶19} Appellant also denied having any adult criminal record, although upon cross-examination the prosecutor confronted him with two felony convictions in Cuyahoga County and a misdemeanor conviction of receiving stolen property in Canton. Appellant admitted he communicated with the boyfriend on Facebook Messenger trying to explain his role in the incident, but had no coherent explanation how he used the same phone that supposedly "went missing" prior to the Letgo conversations.

{¶20} Appellant was charged by amended indictment with one count of robbery pursuant to R.C. 2911.02(A)(2), a felony of the second degree, and one count of forgery pursuant to R.C. 2913.31(A)(3), a felony of the fifth degree.[1] Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled. Appellant was found guilty of robbery and not guilty of forgery. The trial court sentenced appellant to a prison term of six years.

{¶21} Appellant now appeals from the judgment entries of conviction and sentence.

{¶22} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶23} "I. THE APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."

{¶24} "II. THE APPELLANT WAS DENIED HIS RIGHT TO FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT."

---

[1] Appellee dismissed one count of misdemeanor theft prior to trial.

{¶25} "III.   THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

**ANALYSIS**

I.

{¶26} In his first assignment of error, appellant argues he received ineffective assistance of trial counsel.  We disagree.

{¶27} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed.2d 83 (1955).  "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶28} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."
*Strickland,* 466 U.S. at 694.

{¶29} In the instant case, appellant first argues defense trial counsel was ineffective in "opening the door to impeachment" regarding his criminal record which was "not otherwise admissible." In making this argument, appellant ignores the fact he testified against counsel's specific advice. The record reveals counsel advised appellant testifying was against his best interests, but appellant decided to proceed anyway. T. I, 241-242. The trial court also advised appellant he had the right not to testify, which could not be used against him, and reiterated that defense counsel advised against testifying "based upon his evaluation of the case as well as his specific defense strategy * * *." T. I., 242.

{¶30} Appellant decided to testify despite these admonishments and had the right to do so. The right to testify is an inherently personal right and is exercised or waived by the client, not the lawyer, and a lawyer shall abide by a client's decision concerning the objectives of representation. *State v. Copeland,* 2nd Dist. Montgomery No. 18711, 2002-Ohio-265, 2002 WL 63161, *2-3 (Jan. 18, 2002) citing *State v. Edwards,* 119 Ohio App.3d 106, 109-110, 694 N.E.2d 534 (10th Dist.1997). The problem, though, is that appellant himself opened the door to use of his criminal convictions for impeachment. As a convicted felon with a record including a conviction of receiving stolen property, appellant's criminal history was admissible for the purpose of attacking his credibility pursuant to Evid.R. 609. Thus, appellant's underlying premise that his criminal history came in because of counsel's ineffectiveness is misplaced.

{¶31} Perhaps attempting to defuse the effect of appellant's criminal convictions, upon direct examination defense trial counsel asked appellant, "What's your criminal record like, Antonio?" Appellant replied he "didn't really have one" as an adult, a statement immediately disproven upon cross-examination. Defense trial counsel's decision to ask appellant about his criminal record may well have been a strategic tactic to raise the topic before appellee could; it was appellant's unfortunate choice to highlight the issue by lying in response. We cannot find trial counsel acted incompetently under these circumstances. See, *State v. Bachtel*, 5th Dist. Holmes No. 99CA011, 2002-Ohio-2528 [no ineffective assistance where appellant chose to "embellish" his answer when defense trial counsel asked about his record and appellant failed to demonstrate he would have been acquitted but for the evidence of his criminal record]. "Trial defense counsel was as effective as was possible under the trying circumstance where the defendant insists on testifying against the advice of such counsel * * *." *State v. DeJarnette*, 10th Dist. Franklin No. 75AP-137, 1975 WL 181691, *2 (Aug. 28, 1975). As the Ohio Supreme Court has observed, a competent criminal defendant may testify on his own behalf, or refuse to do so, against the advice of counsel, and however wise or foolish his decisions, they are his. *State v. Berry,* 80 Ohio St.3d 371, 1997-Ohio-336, 686 N.E.2d 1097 (1997), citing *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

{¶32} Moreover, we find no "reasonable probability" that excluding the information about appellant's criminal history would have led to his acquittal. *State v. Spaulding*, -- Ohio St.3d --, 2016-Ohio-8126, --N.E.3d --, ¶ 164, reconsideration denied, 147 Ohio St.3d 1480, 2016–Ohio–8492, 66 N.E.3d 766, and cert. denied*, -- S.Ct. -- (U.S. June 5, 2017), citing *State v. Madrigal,* 87 Ohio St.3d 378, 389–390, 721 N.E.2d 52 (2000). As

addressed infra in our discussion of the third assignment of error, appellant's robbery conviction is supported by overwhelming evidence.

{¶33} Appellant further argues defense trial counsel was ineffective in failing to object to allegedly improper comments of the prosecutor during closing argument. Appellant fails, though, to cite to any specific statement in the record.  As we will address infra in our discussion of appellant's second assignment of error, we find the prosecutor's closing argument was not objectionable and did not improperly comment upon appellant's pre-arrest silence or right against self-incrimination.

{¶34} In the context of the entire trial, we find defense trial counsel was not deficient in failing to object during closing argument. Even had the argument been objectionable, counsel may have deliberately chosen not to object to avoid drawing the jury's attention to the comments. Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway,* 109 Ohio St.3d 412, 2006–Ohio–2815, ¶ 101. Moreover, the failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. *State v. Crawford,* 5th Dist. Richland No. 07 CA 116, 2008–Ohio–6260, ¶ 72, appeal not allowed, 123 Ohio St.3d 1474, 2009–Ohio–5704, 915 N.E .2d 1255, citing *State v. Fears,* 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999).

{¶35} Further, we find no reasonable probability the outcome of the trial would have been different had such objections been raised. *State v. Scott*, 5th Dist. Richland No. 11CA80, 2012-Ohio-3482, ¶ 66, appeal not allowed, 133 Ohio St.3d 1491, 2012-Ohio-5459, 978 N.E.2d 910, citing *State v. Graber,* 5th Dist. Stark No. 2002CA00014,

2003–Ohio–137, ¶ 154, appeal not allowed, 101 Ohio St.3d 1466, 2004–Ohio–819, 804 N.E.2d 40.

{¶36} We conclude appellant did not receive ineffective assistance of counsel. Appellant's first assignment of error is overruled.

II.

{¶37} In his second assignment of error, appellant argues he was denied a fair trial due to prosecutorial misconduct. We disagree.

{¶38} The test for prosecutorial misconduct is whether the prosecutor's remarks and comments were improper and if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott,* 51 Ohio St.3d 160, 555 N.E .2d 293 (1990), cert. denied, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed .2d 596 (1990). In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived appellant of a fair trial based on the entire record. *Lott,* supra, 51 Ohio St.3d at 166.

{¶39} We note appellant did not object to the claimed misconduct at trial. If trial counsel fails to object to the alleged instances of prosecutorial misconduct, the alleged improprieties are waived, absent plain error. *State v. White,* 82 Ohio St.3d 16, 22, 1998–Ohio–363, 693 N.E.2d 772 (1998), citing *State v. Slagle,* 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992).

{¶40} We therefore review appellant's allegations under the plain-error standard. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be

noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn,* 5th Dist. Stark No. 2008–CA–00137, 2009–Ohio–1688, citing *State v. Morales,* 10 Dist. Franklin Nos. 03–AP–318, 03–AP–319, 2004–Ohio–3391, at ¶ 19. The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶41} Again, appellant does not cite to the record and fails to direct us to any specific statement, arguing generally the prosecutor "in his closing argument, alleged that [appellant] refused to cooperate with police prior to his arrest, that he failed to proclaim his innocence to the authorities, and that he changed his story." In closing argument, a prosecutor may comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." *Lott,* supra, 51 Ohio St.3d at 165. We have reviewed the entire closing argument and rebuttal and note the following statement by the prosecutor:

> * * * *.

> This story—who knows what the original story was; we don't
> know. Detective Pierson talked to [appellant]. Come in; if you have
> something, come in.

[Appellant] doesn't have any burden of proof; he doesn't have

to prove a thing. It's my burden to prove the elements beyond a

reasonable doubt, which was done.

* * * *.

T. II, 35.

{¶42} We find the statement above a fair comment on the evidence. The prosecutor's statement is not improper because he did not shift the burden of proof to appellant, and this statement did not deprive appellant of a fair trial. Moreover, appellant cannot demonstrate, even assuming *arguendo* the cited statement was improper, "but for" the statement he would not have been convicted of robbery.

{¶43} Appellant was not denied a fair trial due to prosecutorial misconduct. His second assignment of error is overruled.

III.

{¶44} In his third assignment of error, appellant argues his robbery conviction is against the manifest weight and sufficiency of the evidence.[2] We disagree.

{¶45} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio

---

[2] On page 11 of his brief, appellant states he was convicted of robbery, forgery, and petty theft, but as we noted supra, he was found not guilty of forgery and the petty theft count was dismissed. Our discussion of this assignment of error, therefore, addresses appellant's conviction upon one count of robbery.

Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶46} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶47} Appellant was found guilty of one count of robbery pursuant to R.C. 2911.02(A)(2), which states, "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another[.]" Appellant's arguments regarding the manifest weight and sufficiency of the evidence are premised upon conflicting witness accounts. Appellant points to the fact that Ryan Thomas' testimony conflicted with that of Jane Doe and her boyfriend; Thomas claimed no one chased him out of the house when he left with the PlayStation 4 and he waited in front of the house for appellant to

pull up in the car. Thomas' story about events subsequent to the robbery is thus essentially consistent with appellant's, but Thomas claimed it was appellant who initiated the theft in the first place. The weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.

{¶48} Jane Doe and her boyfriend testified they communicated with appellant regarding the purchase of the PlayStation 4 via the Letgo app. Thomas arrived at their house pursuant to the boyfriend's conversation on the phone with the purchaser, and appellant admitted he was the driver of the purple Neon who brought Thomas to the house. Thomas testified appellant sent him into the house with an envelope of funny money to get the Playstation, and he "knew what to do." Jane Doe and her boyfriend testified Thomas fled the house with the PlayStation after attempting to hand over the envelope of funny money, and Jane Doe testified appellant struck her with the vehicle as the pair left the scene. Appellee's exhibits included photos of extensive bruising to Doe's knee consistent with the injury she described. Appellant's robbery conviction is supported by sufficient evidence.

{¶49} The inconsistencies in the witnesses' accounts were for the jury to resolve. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *State v. Brindley,* 10th Dist. Franklin No. 01AP–926, 2002–Ohio–2425, ¶ 16. We defer to the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. When assessing witness credibility, "[t]he choice between credible witnesses and their

conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan,* 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *State v. Pizzulo,* 11th Dist. Trumbull No. 2009–T–0105, 2010–Ohio–2048, ¶ 11. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. *Id.*

{¶50} Nor do inconsistencies in the testimony establish appellant's conviction is against the manifest weight of the evidence. A defendant is not entitled to a reversal on manifest weight grounds simply because there was inconsistent evidence presented at trial. *State v. Raver,* 10th Dist. Franklin No. 02AP604, 2003–Ohio–958, ¶ 21. The trier of fact is in the best position to take into account any inconsistencies, along with the witnesses' demeanor and manner of testifying, and determine whether or not the witnesses' testimony is credible. See, *State v. Williams,* 10th Dist. Franklin No. 02AP–35, 2002–Ohio–4503, ¶ 58. We have held that the testimony of one witness, if believed by the jury, is enough to support a conviction. See *State v. Dunn,* 5th Dist. Stark No. 2008–CA–00137, 2009–Ohio–1688, ¶ 133.

{¶51} Testimony from appellee's witnesses established appellant communicated with Jane Doe and her boyfriend about purchasing the PlayStation; he brought Thomas to the house in the purple Neon; and he struck Jane Doe as he and Thomas left the scene. The jury may take note of the inconsistencies and resolve or discount them accordingly, but such inconsistencies do not render defendant's conviction against the

manifest weight of the evidence. *State v. Nivens,* 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714, at *3 (May 28, 1996).

{¶52} Upon our review of the entire record, including the exhibits, we conclude appellant's robbery conviction is supported by sufficient evidence and is not against the manifest weight of the evidence.  Appellant's third assignment of error is overruled.

**CONCLUSION**

{¶53} Appellant's three assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By:  Delaney, P.J.,

Wise, John, J. and

Baldwin, J., concur.