[Cite as *State v. Brooks*, 2020-Ohio-3997.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 19CA70 |
| | : | |
| CALVIN BROOKS JR. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Richland County Court
of Common Pleas, Case No. 2018-CR-
0556N


JUDGMENT:                    AFFIRMED


DATE OF JUDGMENT ENTRY:      August 5, 2020


APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

GARY BISHOP                             RANDALL E. FRY
RICHLAND CO. PROSECUTOR                 10 West Newlon Place
JOSEPH C. SNYDER                        Mansfield, OH 44902
38 South Park St.
Mansfield, OH 44902

*Delaney, J.*

{¶1}   Appellant Calvin Brooks Jr. appeals from the July 2, 2019 Sentencing Entry of the Richland County Court of Common Pleas.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   The following facts are adduced from the record of appellant's jury trial.

{¶3}   On June 30, 2017, Jane Doe and John Roe lived together with their baby in an apartment on Blymyer Avenue in Mansfield.  Jane and John both acknowledge that they have mental challenges.  The two were able to live independently at this time, however, and were in a long-term relationship.

{¶4}   Jane, John, and their baby lived in Apartment 38, across the hall from Apartment 39.  A number of people lived in or stayed regularly at Apartment 39: appellant, co-defendant Hillary Brooks ("Hillary"), Brittnianna Walker ("Walker"), Rashaud Morton-Bonham ("Rashaud"), and Hillary Brooks' mother Tracy Crawford, known to residents of the Blymyer apartments as "Mama T."  "Mama T" was the property manager of the Blymyer apartment building.

{¶5}   John Roe considered the group in Apartment 39 to be his friends and frequently "hung out" in the apartment.  Jane Doe, however, was more wary and usually stayed in her own apartment with her child.  A few days before this incident, Hillary Brooks and Brittnianna Walker had taunted Jane as she walked outside the apartment building, insulting her and throwing cans at her head.  The women were angered because Jane did not respond to their taunts.

{¶6}   On June 30, 2017, starting around noon, John was drinking with appellant, Hillary, Walker, and Rashaud in Apartment 39; the five drank from a bottle of liquor John

supplied.  As they drank, Hillary and Walker asked John why Jane never came over and why she didn't like them.  The women became increasingly agitated, deciding that they wanted to beat up Jane for ignoring them.  John didn't want to be part of the conversation anymore because they were "dogging on" Jane, and got up to return to Apartment 38.  Appellant and Rashaud told John that if he tried to prevent the women from attacking Jane or intervened in the fight, the men would attack him.  John grabbed the liquor bottle and ran out of the apartment, across the hall.

{¶7}  Appellant and Rashaud prevented John from closing the apartment door; the two pushed the door open and struck John in the head.  Jane was inside holding the baby, and John saw Rashaud punch her.  Hillary and Walker also pushed their way into Apartment 38.  Appellant and Rashaud kicked and punched John, and Hillary and Walker hit and punched Jane.  John remembered little of the first beating because he was struck in the head and face severely.  Eventually the four intruders left Apartment 38 and John closed and locked the door.  He was covered with blood and got into the shower to clean himself.

{¶8}  John testified he doesn't remember anything from the moment he stepped into the shower until sometime later when he woke up on a stretcher in an ambulance.

{¶9}  Jane filled in the blanks.  She testified that John left their apartment around noon to drink across the hall.  Several hours later he returned, but appellant and Rashaud were also trying to enter the apartment.  Jane opened the door attempting to let only John in, but appellant and Rashaud pushed their way in.  They began hitting and kicking John.

{¶10} At first Jane ran into the kitchen with the baby and placed the baby in a Pack-N-Play.  Hillary and Walker then entered the apartment, and Jane asked what was

going on. The two women said it was none of her business and began to beat Jane. Eventually the four left the apartment and Jane closed and locked the door.

{¶11} Jane went to the shower to assist John and he told her to call 911. Jane said she couldn't because she didn't have any minutes left on her phone, not realizing the phone would still permit her to make an emergency call. Jane was afraid to leave the apartment to seek help because she assumed the four intruders were outside.

{¶12} Five or ten minutes later, the group returned, this time breaking down the door to Apartment 38. Appellant and Rashaud battered the door down and it fell on John, knocking him unconscious. Appellant and Rashaud continued to beat John. Jane recorded audio of the assault with her phone. Then Hillary and Walker returned, yelling at Jane that she "should be protecting her man." Hillary and Walker again began to beat Jane. Appellee played the audio recordings of the second round of entries and beatings at trial.

{¶13} In the meantime, a downstairs neighbor heard arguing and a "thud" loud enough and strong enough to shake the walls of their apartment.[1] The neighbor heard screaming for 10 or 15 minutes. The neighbor was used to disturbances at the apartments and usually did not get involved, but knew that a baby lived upstairs. Concerned for the baby, the neighbor cautiously crept upstairs, spotting blood on the wall of the hallway and observing the door knocked off the hinges of Apartment 38. They peered into the apartment just long enough to see John on the floor being beaten viciously by two men. The neighbor also saw Hillary and Walker inside the apartment, but did not

---

[1] There is only one neighbor witness but that person is referred to by the collective genderless pronoun "they" to protect their identity.

see Jane. They heard Jane screaming, however, and realized Hillary and Walker were beating her.

{¶14} The neighbor ran downstairs and called a relative who works for law enforcement. The relative called 911 and reported the ongoing beatings. The neighbor left the building and encountered "Mama T" outside, who asked what all the screaming was about. The neighbor told her police were on their way, and testified "Mama T" went upstairs and warned the four assailants that police were on the way. The four left the building before police arrived. The neighbor observed John transported by paramedics on a stretcher and realized he was badly hurt. The neighbor provided a statement to police despite not wanting to be involved, stating that "Mama T" cleaned up blood throughout the hallway.

{¶15} The responding police officer testified that upon arrival at Apartment 38, the door fell to the floor when he knocked. He found the door broken off the hinges and blood throughout the apartment. He observed Jane and John inside the apartment, both injured but John more seriously than Jane. He observed bruising, swelling, and bleeding from both victims and a squad transported them to the hospital. After speaking separately to Jane, John, and the neighbor, police developed a list of four suspects.

{¶16} Detective William Bushong of the Mansfield Police Department followed up with investigating the case. He looked for the four suspects but eventually spoke only to Hillary in February 2018. Bushong showed Jane and John photo lineups containing photos of the four suspects and both separately identified the assailants.

{¶17} Appellant was charged by indictment with two counts of aggravated burglary pursuant to R.C. 2911.11(A)(1), both felonies of the first degree [Counts I and

II], and one count of felonious assault pursuant to R.C. 2903.11(A)(1), a felony of the second degree [Count III]. Over defense objection, the trials of Hillary Brooks and appellant were joined.

{¶18} The matter proceeded to joint trial by jury. Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and the motion was overruled. Appellant was found guilty as charged.

{¶19} The trial court sentenced appellant to an aggregate prison term of 18 years, with 9 years each upon Counts I and II to be served consecutively, concurrent with 5 years upon Count III. In the sentencing entry of July 2, 2019, the trial court noted consecutive sentences are necessary to protect the public from future crime or to punish the offender, and consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and because at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; and that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶20} Appellant now appeals from the trial court's July 2, 2019 Sentencing Entry.

{¶21} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶22} "I. THE EVIDENCE IN THIS CASE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION ON COUNT II OF THE INDICTMENT AND AS

A RESULT, THE APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED."

{¶23} "II.  THE TRIAL COURT SENTENCE OF CONSECUTIVE SENTENCES IS CONTRARY TO LAW AND IS NOT SUPPORTED BY THE EVIDENCE."

**ANALYSIS**

I.

{¶24} In his first assignment of error, appellant challenges his conviction only upon Count II, asserting that the conviction is against the manifest weight and sufficiency of the evidence.  We disagree.

{¶25} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶26} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the

entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶27} In Count II, appellant was convicted of one count of aggravated burglary pursuant to R.C. 2911.11(A)(1), which states: "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender inflicts, or attempts or threatens to inflict physical harm on another."

{¶28} Appellant concedes his convictions upon Counts I and III, acknowledging that he forced his way into Apartment 38 and inflicted serious physical harm upon John Roe. He argues, though, there is insufficient evidence to support appellee's allegation that he entered the apartment to assault John a second time. Appellant states the only witness who testified he entered the apartment a second time was Jane Doe, and her testimony alone is insufficient to prove his guilt beyond a reasonable doubt.

{¶29} We first note that the testimony of one witness, if believed by the factfinder, is enough to support a conviction. See, *State v. Dunn*, 5th Dist. Stark No. 2008–CA–00137, 2009–Ohio–1688, ¶ 133. Jane Doe testified appellant entered the apartment at least one more time after the initial burglary and assault. Jane Doe's testimony was

buttressed by appellee's admission of the audio recording from Jane's phone. Jane testified she didn't start recording until after the first burglary. At trial she was unable to identify each of the two male voices on the recording. The jury was free to listen to the tapes and arrive at its own decision.

{¶30} We also disagree with appellant's contention that Jane Doe was the only witness to the second entry into the apartment. The neighbor witnessed the ongoing assault after the second entry into the apartment, able to see into Apartment 38 because the door was broken down. After the first entry and assault, Jane and John were still able to close the door and lock it. The neighbor testified to observing two males attacking John Roe inside the apartment subsequent to the first entry and attack.

{¶31} Appellant also points to minor inconsistencies in Jane Doe's account. We defer to the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Johnson*, 2015-Ohio-3113, 41 N.E.3d 104, ¶ 61 (5th Dist.), citing *State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). The jury need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.*

{¶32} Any inconsistencies in the evidence were for the trial court to resolve. *State v. Dotson*, 5th Dist. Stark No. 2016CA00199, 2017-Ohio-5565, ¶ 49. "The weight of the

evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *State v. Delevie*, 5th Dist. Licking No. 18-CA-111, 2019-Ohio-3563, ¶ 30, appeal not allowed, 158 Ohio St.3d 1410, 2020-Ohio-518, 139 N.E.3d 927, citing *State v. Brindley*, 10th Dist. Franklin No. 01AP-926, 2002-Ohio-2425, 2002 WL 1013033, ¶ 16. In the instant case, appellee's evidence was compelling, and the jury was free to weigh the evidence accordingly.

{¶33} We find the trial court did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's conviction upon Count II be reversed and a new trial ordered. Appellant's conviction is not against the manifest weight or sufficiency of the evidence. His first assignment of error is overruled.

II.

{¶34} In his second assignment of error, appellant summarily argues his consecutive sentences are not supported by the record. We disagree.

{¶35} Appellant was convicted upon two counts of aggravated burglary in Counts I and II, both felonies of the first degree.[2] The trial court imposed consecutive prison terms of 9 years each. "[A]ppellate courts must adhere to the plain language of R.C. 2953.08(G)(2)." *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 7. An appellate court may only modify or vacate a sentence if it finds by clear and convincing evidence that the record does not support the sentencing court's decision. *Id.* at ¶ 23. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be

---

[2] The trial court found that appellant's conviction upon Count III, felonious assault, merged for purposes of sentencing.

established.'" *State v. Silknitter*, 3rd Dist. Union No. 14–16–07, 2017–Ohio–327, ¶ 7, citing *Marcum, supra.* Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but does not require the certainty of "beyond a reasonable doubt." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶36} In the instant case, appellant argues summarily that "if this Court reviews the entire record, it will find that indeed consecutive sentences are not support[ed] by the record [and are therefore] contrary to law." Appellant explicitly concedes the trial court made the proper findings; instead, he disagrees with the weight afforded to those findings. "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 16 N.E.3d 659, 2014-Ohio-3177, syllabus.

{¶37} In Ohio, there is a statutory presumption in favor of concurrent sentences for most felony offenses. R.C. 2929.41(A). The trial court may overcome this presumption by making the statutory, enumerated findings set forth in R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 23. R.C. 2929.14(C)(4) concerns the imposition of consecutive sentences and provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future

crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶38} In this case, the record does establish, and appellant admits, that the trial court made the findings required by R.C. 2929.14(C)(4) at the time it imposed consecutive sentences. Upon the record at sentencing and in the judgment entry, the trial court found that consecutive sentences are necessary to protect the public from future crime or to punish the offender; are not disproportionate to appellant's conduct and to the danger he

poses to the public; and at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of appellant's conduct.

{¶39} Appellant's argument overlooks the trial court's specific findings in the record. Upon imposing consecutive prison terms, the trial court noted appellant served two prison terms and has a lengthy record of misdemeanor and drug convictions. He demonstrated absolutely no remorse in the instant case in which he took advantage of the victims' disabilities and John Roe's misunderstanding that they were "friends." This relationship, and the victims' disabilities, facilitated the offenses. Appellant caused serious physical harm to John Roe, inflicting injuries including a brain bleed, a shattered nose, and a broken jaw which required Roe to spend three days hospitalized in an I.C.U. Finally, the trial court expressed its disdain for appellant's actions in bludgeoning John Roe in front of his child.

{¶40} Based on our review, we find that the record demonstrates that the trial court made the requisite findings and the sentence was within the statutory range. Moreover, the record reveals that the trial court properly considered the statutory purposes and factors of felony sentencing, and the decision is supported by clear and convincing evidence. Accordingly, we find that the trial court did not err in the imposition of appellant's prison sentence, including imposition of consecutive terms, and did not fail to consider the statutory factors.

{¶41} Appellant's second assignment of error is overruled.

**CONCLUSION**

{¶42} Appellant's two assignments of error are overruled and the judgment of the

Richland County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Wise, John, J., concur.