[Cite as *State v. Keller*, 2019-Ohio-3857.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 18CAA090075 |
| | : | |
| ADAM C. KELLER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court
                            of Common Pleas, Case No. 18 CR I 04
                            0250

JUDGMENT:                   AFFIRMED

DATE OF JUDGMENT ENTRY:     September 20, 2019

APPEARANCES:

For Plaintiff-Appellee:                   For Defendant-Appellant:

MELISSA A. SCHIFFEL                       MICHAEL R. DALSANTO
DELAWARE CO. PROSECUTOR                    33 West Main St., Suite 109
HAWKEN FLANAGAN                           Newark, OH 43055
145 N. Union St., 3rd Floor
Delaware, OH 43015

*Delaney, J.*

{¶1}   Appellant Adam C. Keller appeals from the August 31, 2018 Judgment Entry on Sentence of the Delaware County Court of Common Pleas.  Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}   The following evidence is adduced from the record of appellant's jury trial.

{¶3}   This case arose on April 20, 2018 when Jane Doe went to the home of her boyfriend, appellant, to discuss their relationship.  Appellant and Doe had known each other for a long time and dated for about a year and a half.  Their relationship was tumultuous, however.  Appellant was frequently jealous and constantly asked Doe for proof of her whereabouts, demanding to know who she spoke to and corresponded with on social media.  Doe was increasingly irritated because appellant demanded that she send him screen shots of call and text histories from her phone.  Doe was also concerned about appellant's drinking and wanted him to go to rehab.  On this particular day, though, Doe was also anxious about other things; she was worried about a school conference about her son's learning issues, and she had an upcoming biopsy due to gynecologic concerns.

{¶4}   When appellant texted her earlier that day, therefore, and asked whether they could have sex when she came over, Doe responded, "I'll think about it."  She testified she had absolutely no interest in sex that day for many reasons, but she didn't want to cause an argument.  She knew that if she said no, appellant would demand to know "if you're not having sex with me, who are you having sex with?"

{¶5}   As soon as she entered appellant's house, however, he hugged her and stuck his hands down her pants.  Doe was wearing a pair of knit leggings.  Doe said she didn't want to have sex, pushed appellant's hands away, and walked away from him.  Doe sat down on a recliner and appellant sat on the couch.  Then he got up to smoke a cigarette in the kitchen and drank a beer.

{¶6}   When appellant returned to the living room, he knelt in front of Doe and again tried to put his hands down her pants.  She said no and he asked, "Why, who else has been there?"  She said "no one."  Appellant showed her paperwork about an alcohol rehab facility, and he sat in front of Doe for a moment with his head in her lap.  Doe looked at her phone to check the time and appellant asked who she was talking to.  Appellant demanded to see her phone and offered to show her his.

{¶7}   Doe got up from the chair and started to leave the house, stating she was taking a walk.  Eventually appellant agreed to come with her and the two went for a short walk.  Upon their return to the house, they went to Doe's vehicle parked in the driveway to retrieve a lighter.  Appellant again wanted to look at Doe's phone and became angry when she refused.  Doe was inside her vehicle and rolled up the windows and locked the doors.  Appellant repeatedly punched the window.  Eventually Doe handed appellant her phone to get him to stop.  Appellant went back into the house, with her phone, and Doe followed him.

{¶8}   Inside, Doe tried to grab her phone from appellant as he held it away from her, accusing her of talking to other people.  Doe finally grabbed her phone and ran for the door, but appellant slammed and locked it.  Doe tried to leave through a different door

in the kitchen, but was unable to open the door. Appellant laughed at her. Doe was scared and said she was going to leave, but appellant said "no, you're not."

{¶9}    Appellant walked toward her and told her to take her pants off. Doe refused and said she would call the police. Appellant said "go ahead, by the time they get here I'll have beaten the shit out of you." Appellant repeatedly told her to take her pants off, and Doe said no, she didn't want to. Appellant pushed her down on the couch in a seated position. Doe said "let me up and I won't tell anyone." Appellant knelt in front of Doe, pulled her pants and underwear down, and performed oral sex. Doe screamed and begged for him to stop.

{¶10} Appellant got up, removed one of Doe's shoes, and pulled one leg out of her pants and underwear. Appellant held Doe's arms down and unfastened his own clothing. When he realized he could not achieve penetration in the position they were in on the couch, appellant ordered Doe onto the floor. Appellant forcefully placed his penis in her vagina. Doe was not sure how long the sexual assault lasted, but it hurt and she was in pain. Appellant tried to suck on her neck and she pushed his face away. Doe continued to cry and scream, begging appellant to stop. Appellant told her he would not ejaculate inside her if she stopped crying. Doe kept saying no and yelling for him to get off of her. Appellant ejaculated inside Doe and then laid on top of her. Doe pushed him off, pulled her clothing on, and ran out of the house to her vehicle. She got in and locked all of the doors.

{¶11} Appellant followed her out of the house and grabbed at the door handle as Doe backed down the driveway. Doe called 911 as she drove away. At that point she

was ambivalent about telling police what happened; she was afraid no one would believe her and she was embarrassed to tell anyone she had been raped.

{¶12} In response to the 911 call, Ptl. Needham of the Delaware Police Department called Doe back and spoke with her. He described Doe as distraught and embarrassed. He asked her to come to the police department to talk after she picked up her son. Needham was on hand to greet Doe as she arrived a short time later, still visibly distraught. She fell to one knee as she approached the police department. Needham kept an eye on Doe's child as she spoke to Detective Franks in an interview room.

{¶13} Franks described Doe as traumatized. He asked her several times whether she needed EMS attention because she was distraught and hyperventilating. Doe's phone continued to beep as she spoke to Franks because appellant was calling and texting. Franks spoke to Doe and obtained a statement, then worked with other officers to write and execute search warrants. Search warrants were executed at appellant's residence and upon his person. The phones of both Doe and appellant were examined for relevant evidence.

{¶14} Doe went to Grady Memorial Hospital to be examined by a Sexual Assault Nurse Examiner (SANE). The SANE nurse testified at trial that she took a complete history from Doe and examined her for injuries and evidence. The nurse indicated that Doe had redness to her scalp where she said her hair had been pulled and had redness and abrasions on other parts of her body. She had areas of bruising on her inner thighs. Using blue dye, the SANE also found three separate areas of injury to the interior of Doe's vagina, indicating enough force was applied to abrade the tissue.

{¶15} In the meantime, as Franks interviewed Doe, her phone was ringing with texts and calls from appellant.  A text conversation around 5:00 p.m., several hours after the assault, was extracted from the cell phones and entered at trial as appellee's exhibit 20, *sic* throughout:

| Appellant's text messages | Doe's text messages |
|---|---|
| Cirera was wathing the kids? | |
| | I said no over and over and over.  I screamed it…begged you…stop…I kept telling you no I didn't want to have sex. |
| | I begged you to stop!!  Begged you. |
| I know | |
| | I screamed at the top of my lungs…NO STOP PLEASE STOP |
| | I was screaming and crying that I didn't want to have sex and begged you… |
| I know…When im gone you won't have to worry about that anymore | |
| | But you kept going and did it anyways..as I'm screaming and cry |
| I just raped my girlfriend… | |
| I need a bullet in my head | |
| I just am gonna lay down…And hope I stay that way…Just know I am sorry and I love you | |

{¶16} Appellant was the only defense witness at trial.  He denied raping Doe and said the sex was consensual.  When confronted with the text messages, he said Doe was upset that he ejaculated inside her because an unplanned pregnancy would be very risky for her.  He was simply agreeing with her comments in the text messages "to get a response" from her and he "wanted to make sure she was OK."  T. 644.  His comment that "[he] just raped [his] girlfriend" was sarcastic and was not a confession to rape.

{¶17} Appellant was charged by indictment as follows: Count I, rape pursuant to R.C. 2907.02(A)(2), a felony of the first degree; Count II, rape pursuant to R.C.

2907.02(A)(2), a felony of the first degree; Count III, kidnapping pursuant to R.C. 2905.01(A)(4), a felony of the first degree; and Count IV, gross sexual imposition pursuant to R.C. 2907.05(A)(1), a felony of the fourth degree.[1]

{¶18} Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Appellant moved for judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence; the motion was overruled. The jury found appellant guilty as charged upon Counts II and III, and not guilty upon Counts I and IV. At a separate sentencing hearing, the trial court found that Counts II (rape) and III (kidnapping) merged for purposes of sentencing, and appellee elected to sentence upon Count II. The trial court thereupon sentenced appellant to a prison term of 11 years.

{¶19} Appellant now appeals from the trial court's judgment entries of conviction and sentence.

{¶20} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶21} "I. THE JURY'S VERDICT THAT THE APPELLANT COMMITTED RAPE IN VIOLATION OF R.C. 2907.02(A)(2) AND KIDNAPPING IN VIOLATION OF R.C. 2905.01 IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶22} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY SENTENCING THE APPELLANT TO A MAXIMUM SENTENCE WITHOUT DISCUSSING

---

[1] The indictment notes Count I relates to forced cunnilingus and Count II relates to forced vaginal intercourse.

SERIOUSNESS AND RECIDIVISM FACTORS OR OTHERWISE EXPLAINING THE SENTENCE IN ANY WAY."

**ANALYSIS**

I.

{¶23} In his first assignment of error, appellant argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶24} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶25} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must

be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶26} Sufficiency of the evidence is a legal question dealing with whether the state met its burden of production at trial. *State v. Murphy*, 5th Dist. Stark No. 2015CA00024, 2015–Ohio–5108, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Murphy* at ¶ 15. The test for sufficiency of the evidence raises a question of law and does not permit the court to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Murphy* at ¶ 15, citing *Thompkins* at 386.

{¶27} In the instant case, appellant was convicted of rape pursuant to R.C. 2907.02(A)(2), which states, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or

any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

{¶28} Appellant was also convicted of kidnapping pursuant to R.C. 2905.01(A)(4), which states: "No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will." R.C. 2907.01(C) defines "sexual activity" as "sexual conduct or sexual contact, or both."

{¶29} Appellant argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence because Doe and appellant created "dueling narratives" at trial and the jury apparently believed some of appellant's story because he was convicted of two offenses but acquitted of two others. We have held that the testimony of one witness, if believed by the factfinder, is enough to support a conviction. See, *State v. Dunn,* 5th Dist. Stark No. 2008–CA–00137, 2009–Ohio–1688, ¶ 133. The weight to be given the evidence introduced at trial and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982), syllabus. It is not the function of an appellate court to substitute its judgment for that of the factfinder. State v. *Jenks,* 61 Ohio St.3d 259, 279, 574 N.E.2d 492 (1991). Any inconsistencies in the witnesses' accounts were for the trial court to resolve. *State v. Dotson*, 5th Dist. Stark No. 2016CA00199, 2017-Ohio-5565, ¶ 49. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *State v. Brindley,* 10th Dist. Franklin No. 01AP–926, 2002–Ohio–2425, ¶ 16. We defer to the trier

of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus.

{¶30} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan,* 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *State v. Pizzulo,* 11th Dist. Trumbull No. 2009–T–0105, 2010–Ohio–2048, ¶ 11. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. *Id.* The finder of fact may take note of the inconsistencies and resolve or discount them accordingly, but such inconsistencies do not render defendant's conviction against the manifest weight of the evidence. *State v. Nivens,* 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714, at *3 (May 28, 1996).

{¶31} We note that the "dueling narratives" premise is belied by the evidence presented at trial. Doe's account of a forcible sexual assault was corroborated by the testimony of police officers who encountered her shortly after the assault, distraught and traumatized. Her account was corroborated by the Sexual Assault Nurse Examiner who found abrasions inside her vagina. Finally and most compellingly, her account was corroborated by appellant's incriminating text messages, including "I just raped my girlfriend." The factfinder could easily have found appellant's claims that he was "talking about unprotected sex" and "just trying to elicit a response" from Doe to be not credible.

{¶32} Upon our review of the entire record, we conclude appellant's rape and kidnapping convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. His first assignment of error is overruled.


II.

{¶33} In his second assignment of error, appellant argues the trial court erred in sentencing him to a maximum prison term of 11 years. We disagree.

{¶34} We first note that pursuant to R.C. 2953.08(A)(1)(b), appellant may appeal the instant sentence, as it was imposed for two or more offenses arising out of a single incident, and the court imposed the maximum prison term for the offense of the highest degree. *State v. Cox*, 5th Dist. Licking No. 16-CA-80, 2017-Ohio-5550, ¶ 9.

{¶35} Appellant argues that we review the instant sentence for an abuse of discretion pursuant to *State v. Kalish,* 120 Ohio St. 3d 23, 2008–Ohio–4912, 896 N.E.2d 124. However, we no longer review sentences pursuant to the standard set forth in *Kalish.* We now review felony sentences using the standard of review set forth in R.C. 2953.08. *Cox*, supra, 2017-Ohio-5550 at ¶ 10, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 22; *State v. Howell*, 5th Dist. Stark No. 2015CA00004, 2015–Ohio–4049, ¶ 31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See also, State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶ 28.

{¶36} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross*, 161 Ohio St. at 477.

{¶37} Accordingly, pursuant to *Marcum* this Court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that: (1) the record does not support the trial court's findings under relevant statutes, or (2) the sentence is otherwise contrary to law.

{¶38} R.C. 2953.08(G)(2)(a), allowing appellate review of whether the record supports findings made by the trial court, does not apply in the instant case. R.C. 2953.08(G)(2)(a) sets forth a standard for review of findings made pursuant to specific statutes, none of which are applicable to the instant case. Therefore, we only review the instant sentence to determine if it is contrary to law.

{¶39} A trial court's imposition of a maximum prison term is not contrary to law as long as the court sentences the offender within the statutory range for the offense, and in so doing, considers the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth R.C. 2929.12. *State v. Santos*, 8th Dist. Cuyahoga No. 103964, 2016–Ohio–5845, ¶ 12. Although a trial court must consider the factors in R.C. 2929.11 and 2929.12, there is no requirement that the court state its reasons for imposing a maximum sentence, or for imposing a particular

sentence within the statutory range. *Id.* There is no requirement in R.C. 2929.12 that the trial court states on the record that it has considered the statutory criteria concerning seriousness and recidivism or even discussed them. *State v. Hayes*, 5th Dist. Knox No. 18CA10, 2019-Ohio-1629, ¶ 49, citing *State v. Polick*, 101 Ohio App.3d 428, 431, 655 N.E.3d 820 (4th Dist. 1995).

{¶40} In the instant case, a sentence of 11 years is within the statutory framework set forth in R.C. 2929.14(A)(1)(a) for a felony of the first degree. The sentence is therefore not contrary to law. *Cox*, supra, 2017-Ohio-5550 at ¶ 12. The trial court noted that a presentence investigation was not necessary because the conviction required a mandatory term. The trial court stated that the sentencing factors and statements of the parties were taken into account in fashioning the sentence. Appellee recited appellant's criminal history, including prior felonies, a misdemeanor aggravated menacing, and a conviction for violating a protection order that arose in the instant case when appellant called Doe from jail. Appellee also noted the evidence showed appellant has a problem with alcohol and has demonstrated no remorse.

{¶41} Based on the foregoing, we find the trial court considered the purposes and principles of sentencing [R.C. 2929.11] as well as the factors that the court must consider when determining an appropriate sentence. [R.C. 2929.12]. The trial court has no obligation to state reasons to support its findings, nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry.

{¶42} While appellant may disagree with the weight given to these factors by the trial judge, appellant's sentence was within the applicable statutory range for a felony of

the first degree and therefore, we have no basis for concluding that it is contrary to law.

*Moyer*, supra, 2019-Ohio-1187, ¶ 34.

{¶43} Appellant's second assignment of error is overruled.

## CONCLUSION

{¶44} Appellant's two assignments of error are overruled and the judgment of the

Delaware County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.