[Cite as *State v. Jones*, 2021-Ohio-3682.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case No. 2020AP110024 |
| | : | |
| GEORGE W. JONES JR. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Tuscarawas County Court of Common Pleas, case no. 2019CR090394 |
| | |
| JUDGMENT: | AFFIRMED |
| | |
| DATE OF JUDGMENT ENTRY: | October 12, 2021 |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee: | For Defendant-Appellant: |
| | |
| RYAN STYER | PATRICK J. WILLIAMS |
| TUSCARAWAS CO. PROSECUTOR | 300 E. Third St., Ste. 1 |
| KRISTINE W. BEARD | Dover, OH 44622 |
| 125 E. High Ave. | |
| New Philadelphia, OH 44663 | |

*Delaney, J.*

{¶1} Appellant George W. Jones Jr. appeals from the November 12, 2020 Judgment Entry of the Tuscarawas County Court of Common Pleas.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   The following facts are adduced from the record of appellant's jury trial.

{¶3} On June 1, 2019, Jane Doe was 15 years old and living with Maternal Grandparents.  Jane would occasionally visit with Father and Stepmother, or with Mother, but she lived primarily in the residence of Maternal Grandparents along with Aunt, Cousin, and appellant, Aunt's boyfriend.  Aunt and appellant lived in the basement of the residence; Jane's bedroom was on the first floor.

*Jane's testimony:  appellant entered her bedroom and touched her*

{¶4} Around 7:00 p.m. on June 1, 2019, Jane returned from a visit to Father's house.  Grandmother and Grandfather were out of town for vacation; Cousin was not home. Aunt and appellant were in the basement, sitting on a couch watching television and drinking "tall boys" of Busch or Bud Light. Jane Doe stood and talked to Aunt and appellant for a short time.  Then she said she was going to bed.  Aunt and appellant asked her to put some alcoholic beverages in a mini-fridge in her bedroom.

{¶5}  Jane went upstairs to her bedroom.  She put the drinks in the mini-fridge by her bed. It was hot in the house because the air conditioner wasn't working properly. Jane usually sleeps in a nightshirt, but this night she slept in a bra, underpants, and shorts.  Although she usually leaves her bedroom door unlocked, she locked the bedroom door this night because she had no shirt on.  Jane fell asleep quickly.

{¶6} She awoke sometime later and was surprised to find appellant in her room, beside her bed. Appellant asked if he could have the drinks from the mini-fridge; Jane said yes, appellant grabbed the drinks, and left the room. Jane got out of bed, locked her bedroom door again, and fell back asleep.

{¶7} Jane awoke again a short time later, and testified that she felt as though she was having a bad dream and someone was doing something to her. She awoke fully and realized appellant was touching her vagina, under her underwear.

{¶8} Appellant looked up, realized Jane was awake, and said "Oh." Jane asked what he was doing, and appellant said he "just wanted to make sure he could still have the drinks from her mini-fridge." Jane told appellant he already had the drinks, and to get out of her room. She told him to leave several times. Finally, appellant left the room.

{¶9} Jane ran to her closet and grabbed a shirt to put on. Appellant came into her bedroom again, stating he was sorry and begging her not to tell anyone. He said he is her "uncle," doesn't want her to tell anyone what he did, and will not do anything like this ever again. Jane said, "it's ok, please just get out of my room."

{¶10} Jane knew what happened was wrong but wanted appellant out of her room. She was crying and hysterical, and hurried to close her door again to keep him out.

{¶11} Jane heard footsteps outside her bedroom and thought appellant went down the basement steps. She turned her TV on, loudly, and called her father on her phone. She was crying and very upset, unable to tell Father what was wrong. Father said he would come to pick her up and hung up. Jane also called the Newcomerstown Police Department, but they gave her the number for the Tuscarawas County Sheriff's

Department based upon the residence address. Jane's stepmother called back to ask Jane why she was so upset during the call with Father. Jane told Stepmother that appellant touched her.

{¶12} Someone knocked on the door of Jane's bedroom and she told them to go away. Aunt said, "It's me," and Jane opened the door. Aunt asked what happened as appellant stood behind her in the doorway, and Jane told Aunt appellant touched her. Jane testified that Aunt immediately punched appellant in the face, threw him down the basement steps, and pushed him out the basement sliding-glass doors.

{¶13} Jane testified that police directed her to Akron Children's Hospital where she was examined by a Sexual Assault Nurse Examiner (SANE).

*Aunt's testimony: Jane says appellant touched her*

{¶14} Aunt testified for appellee at trial. She said Jane came home as Aunt and appellant watched TV; Jane spoke to them briefly and went upstairs to bed. Aunt and appellant continued to watch TV for a while and then also went to bed. Aunt woke up and noticed appellant was out of bed. She went upstairs and found it "weird" that appellant was standing in the hallway outside Jane's bedroom. She asked appellant what was wrong and appellant said Jane was crying in her bedroom.

{¶15} Aunt knocked on the door and Jane screamed "Go away." Aunt asked to come in and entered the room. She found Jane standing with her phone in her hand, hysterical. At first, Jane was unable to tell Aunt what happened and seemed to be having a panic attack. Aunt asked, "Was [appellant] in here?" and Jane nodded yes. Aunt asked, "Did he touch you?" and Jane nodded yes.

{¶16} Appellant was standing in the doorway behind Aunt, shaking his head. Aunt turned around and punched appellant in the face. She pushed him down the basement stairs, threw him out the sliding-glass doors, and locked the doors. Appellant tried to leave but his car wouldn't start. Aunt saw appellant outside, calling someone to ask for a ride.

{¶17} Over objection, Aunt testified that appellant denied touching Jane.

{¶18} Jane's father arrived. Jane and Aunt gathered some belongings and left the house with Father and Stepmother. The four drove that night to Akron Children's Hospital for Jane's SANE examination.

*Investigation:  appellant admits entering bedroom but denies touching*

{¶19} Detective Jeff Moore investigated the matter for the Tuscarawas County Sheriff's Department. He photographed Grandparents' residence, including Jane's bedroom, and the photos were admitted into evidence. Moore did not personally speak with Jane but did interview Aunt, and testified that Aunt's trial testimony was consistent with her statement to him.

{¶20} Moore also interviewed appellant and obtained a written statement from him. Appellant's written statement to Det. Moore was admitted at trial as appellee's Exhibit H.  Appellant's statement is as follows:

> * * * *.
>
> I went upstairs to girlfriend's niece's bedroom.  I unlocked the
> door and tapped her foot to ask for alcohol.  She told me the alcohol
> was in the [illegible].  I grabbed the alcohol + left.  I came back to the
> room to say sorry for barging in and the niece became hysterical.  My

girlfriend came up the stairs and asked if I did anything sexual. The niece said no but that I came into the room a couple times. My girlfriend punched me in the face and then I left.

* * * *.

{¶21} Moore testified that appellant "maintained his denial" throughout the investigation.

*Defense case: no incriminating DNA evidence*

{¶22} The sole defense witness at trial was a forensic scientist from BCI who examined evidence from Jane's clothing and rape kit. The forensic examiner testified she was not able to generate a male DNA profile from the swabs included in the rape kit.

*Indictment, trial, conviction, and community-control sentence*

{¶23} Appellant was charged by indictment with one count of gross sexual imposition pursuant to R.C. 2907.05(A)(5) and (C)(1), a felony of the fourth degree. Appellant entered a plea of not guilty and the matter proceeded to trial by jury. Appellant moved for judgments of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and at the close of all of the evidence; the motions were overruled.

{¶24} Appellant was found guilty as charged. The trial court deferred sentencing pending a pre-sentence investigation.

{¶25} The trial court sentenced appellant to a prison term of 18 months, with all 18 months suspended on the condition that appellant complete a two-year term of supervised community control sanctions. Appellant's sanctions include, e.g., residential treatment in a sex-offender treatment program.

{¶26} Appellant now appeals from the trial court's November 12, 2020 judgment entry of conviction and sentence.

{¶27} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶28} "I. THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THERE WAS INSUFFICIENT EVIDENCE THAT DEFENDANT COMMITTED GROSS SEXUAL IMPOSITION IN VIOLATION OF R.C. 2907.05(A)(5) GROSS SEXUAL IMPOSITION, A FELONY OF THE FOURTH DEGREE."

{¶29} "II. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL."

**ANALYSIS**

I.

{¶30} In his first assignment of error, appellant argues his conviction is against the manifest weight and sufficiency of the evidence.  We disagree.

{¶31} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after

viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶32} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶33} Appellant was found guilty upon one count of gross sexual imposition pursuant to R.C. 2907.05(A)(5), which states in pertinent part:

> No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: [t]he ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of

one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

{¶34} Appellant first argues this is a case of "he said, she said," because appellant has maintained his innocence throughout and Jane's story is supported by "no corroborative evidence." Appellant further argues appellee failed to prove Jane was not his spouse.

{¶35} Jane's testimony at trial was essentially uncontroverted. We have held that the testimony of one witness, if believed by the factfinder, is enough to support a conviction. *State v. Keller*, 5th Dist. Delaware No. 18CAA090075, 2019-Ohio-3857, ¶ 29, *appeal not allowed,* 157 Ohio St.3d 1538, 2020-Ohio-122, 137 N.E.3d 1206, citing *State v. Dunn*, 5th Dist. Stark No. 2008–CA–00137, 2009–Ohio–1688, ¶ 133.

{¶36} Appellant's side of the story was admitted  at trial through his  written statement to Detective Moore, which the jury was free to accept or reject. Although this detail was given scant attention at trial, we note appellant admitted he unlocked Jane's bedroom door to enter her room. His claim that he merely touched her foot could have been rejected by the jury in light of Jane's testimony, her Aunt's corroboration, and the ensuing events.  The weight to be given the evidence introduced at trial and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982), syllabus. It is not the function of an appellate court to substitute its judgment for that of the factfinder. *State v. Jenks*, 61 Ohio St.3d 259, 279, 574 N.E.2d 492 (1991). Any inconsistencies in the witnesses' accounts were for the trial court to resolve. *State v. Dotson*, 5th Dist. Stark No. 2016CA00199, 2017-Ohio-5565, ¶ 49. "The weight of the evidence concerns the inclination of the greater amount of credible

evidence offered in a trial to support one side of the issue rather than the other." *Keller*, supra, at ¶ 29, citing *State v. Brindley*, 10th Dist. Franklin No. 01AP–926, 2002–Ohio– 2425, ¶ 16. We defer to the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus.

{¶37} We disagree that appellant's conviction is against the manifest weight and sufficiency of the evidence merely because he and Jane were the only two people in the room. The jury was able to view Jane's testimony and assess her credibility accordingly. When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *Keller*, supra, at ¶ 30, citing *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).

{¶38} The "he said/she said" premise is belied by the evidence presented at trial. *Keller*, supra, at ¶ 31. Jane's account of waking up to find appellant touching her was corroborated by the testimony of Aunt, who found her afterward in the midst of a "panic attack," hysterical. Jane immediately told Aunt appellant touched her. The availability of DNA evidence is not necessary to corroborate the victim's testimony.

{¶39} Appellant further argues appellee failed to prove an element of the offense: that Jane is not his spouse pursuant to R.C. 2907.05(A). We find this argument unavailing upon our review of the entire record. No legitimate argument exists that Jane was appellant's spouse; appellant admits in his brief, "It is clear [appellant] was the victim's aunt's boyfriend at the time of the incident." At trial, evidence that appellant referred to himself as Jane's "uncle" and was merely Aunt's boyfriend was

uncontroverted. We find the evidence supports the jury's verdict that Jane was not the spouse of the offender.

{¶40} Appellant's conviction upon one count of gross sexual imposition is supported by sufficient evidence and is not against the manifest weight of the evidence. His first assignment of error is overruled.

II.

{¶41} In his second assignment of error, appellant argues he received ineffective assistance of counsel. We disagree.

{¶42} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶43} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶44} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶45} Appellant argues he was denied effective assistance of counsel because defense trial counsel failed to call Deputy Chris Edwards as a defense witness. We disagree with appellant's characterization on appeal of Edwards' potential testimony. Appellant argues:

> * * * *.

> It is clear from a sidebar that occurred from TR. PP. 324-327 that counsel for [appellant] believed that the alleged victim made an inconsistent statement to Deputy Chris Edwards, regarding where she was touched.  It appears that, in an initial statement, the alleged victim may have stated she was touched on the breast.

> * * * *.

> Brief, 10.

{¶46} Upon our review of the transcript, we note that during cross-examination of Detective Moore, Moore testified Edwards was the first law enforcement officer to contact Jane's family on the night of the incident, at the Newcomerstown Police Department. Moore reviewed Edwards' report of the family's allegations. At sidebar, defense trial counsel proffered what Edwards' testimony would have been: Edwards spoke to Stepmother, not to Jane directly; Stepmother said appellant touched Jane's breasts; and Jane denied telling Stepmother that appellant touched her breasts. T. 324-327. Appellee's objection to Moore's testimony about Edwards' report was therefore sustained by the trial court as hearsay-upon-hearsay.

{¶47} We disagree with appellant and find there is no evidence that Jane made a conflicting statement to Edwards, and that Edwards would have been a valuable defense witness. Any testimony about what Stepmother allegedly told him would have been hearsay.

{¶48} Moreover, in the context of an ineffective-assistance claim, defense trial counsel clearly recognized the potential limited benefit of Edwards and proffered his expected testimony into the record. We therefore find defense trial counsel did not err in his handling of Edwards as a potential witness, and even if Edwards had testified as proffered, there is no reasonable probability that the outcome of the trial would have been different.

{¶49} Appellant did not receive ineffective assistance of defense trial counsel and his second assignment of error is overruled.

**CONCLUSION**

{¶50} Appellant's two assignments of error are overruled and the judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Gwin, P.J. and

Wise, Earle, J., concur.