[Cite as *State v. Staysniak*, 2021-Ohio-4099.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 21 CAA 03 0018 |
| | : | |
| MYANNA M. STAYSNIAK | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Delaware County Court
of Common Pleas, Case No. 20CR-I-01-
0077

JUDGMENT:                                      AFFIRMED IN PART; REVERSED AND
REMANDED IN PART

DATE OF JUDGMENT ENTRY:        November 18, 2021

APPEARANCES:

For Plaintiff-Appellee:                        For Defendant-Appellant:

MELISSA A. SCHIFFEL                        GLORIA L. SMITH
DELAWARE COUNTY PROSECUTOR        670 Meridian Way, #188
Westerville, OH 43082

CHRISTOPHER E. BALLARD
145 N. Union St., 3rd Floor
Delaware, OH 43015

*Delaney, J.*

{¶1} Defendant-Appellant Myanna M. Staysniak appeals her March 24, 2021 conviction and sentence by the Delaware County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Defendant-Appellant Myanna M. Staysniak was indicted by the Delaware County Grand Jury on January 31, 2020 for one count of telecommunications fraud, a fifth-degree felony in violation of R.C. 2913.05(A), and one count of identity fraud, a fifth-degree felony in violation of R.C. 2913.49(B)(2). Appellant entered a plea of not guilty to the charges.

{¶3} After entering her plea, Appellant filed a motion for psychological evaluation and a motion to determine competency. The trial court ordered a competency examination, based on which a psychological examination report was filed on January 22, 2021. The trial court held a competency hearing where the parties stipulated to the report that found Appellant competent to stand trial.

{¶4} On March 1, 2021, Appellant filed a motion for intervention in lieu of conviction. A change of plea hearing was held on March 4, 2021, but Appellant chose not to change her plea. Pursuant to a judgment entry filed March 23, 2021, the matter was set for a bench trial.

{¶5} The matter came on for bench trial on March 23, 2021. The following evidence was adduced at trial.

{¶6} On July 18, 2019, Appellant's aunt, a resident of Delaware County, filed a report with the Genoa Township Police Department alleging unauthorized transactions were made from her PNC Bank account. She provided Detective Michael Riehle with a

statement from her PNC Bank account that showed the following unauthorized transactions:

July 17, 2019, Amazon, $150

July 17, 2019, Uber Eats, $1.49

July 17, 2019, Uber Eats, $17.20

July 17, 2019, Uber Eats, $17.20

{¶7} Appellant's aunt had a debit card associated with the PNC Bank account. It was the aunt's belief that Appellant had used the aunt's debit card without permission to make the above transactions.[1] In July 2019, Appellant and her aunt had been on a trip together, where the aunt allowed Appellant to use her iPad. The aunt had placed her debit card information on the iPad, and she believed that Appellant got her debit card number from the iPad. The iPad was not available for inspection, however, because the aunt said she destroyed the iPad. The aunt also testified that while on the trip together, the aunt gave Appellant her debit card to pay for their meal at a restaurant or to purchase something at a store, but Appellant gave the debit card back to her aunt.

{¶8} Based on the aunt's allegations, Det. Riehle issued subpoenas to Uber Eats, Venmo, and Amazon. Uber Eats, Venmo (a subsidiary of PayPal), and Amazon are companies that provide goods and services through online transactions placed using a mobile device or computer. Amazon did not provide any records to Det. Riehle. Uber Eats provided a response indicating that "Mya S" used the aunt's debit card number to purchase food from a Subway restaurant in Columbus, Ohio on July 16, 2019. Venmo provided a response showing that user "Mya Staysniak" used the aunt's debit card

---

[1] During the bench trial, the parties use the words "debit card" and "credit card" interchangeably to refer to the debit card associated with the aunt's PNC Bank account.

number on July 16, 2019 to transfer funds in the amount of $250, identified as "rent," to another Venmo user. The Venmo transaction was declined.

{¶9} After receiving the information from Uber Eats and Venmo, Det. Riehle contacted Appellant on the telephone. The State introduced the recorded phone conversation between Det. Riehle and Appellant and it was played at trial without objection. (State's Exhibit 6). On the phone call, Det. Riehle identified himself and told Appellant that he wanted to talk to her about the charges on the aunt's credit card that came back to Appellant. Det. Riehle said he wanted to talk to Appellant to get any insight from her because her aunt said she did not give Appellant authorization make the charges. Appellant stated she talked about it with her aunt and Appellant would just have to owe her that money back. Det. Riehle asked if Appellant was asking him that question and Appellant responded that she was telling him. He explained that "obviously" she did not have authorization to make those charges, to which Appellant responded, "yeah." Det. Riehle told her that when she made the charges, each charge was a felony for identity theft. He reviewed the alleged unauthorized transactions with her and Appellant confirmed she had made the transactions.

{¶10} Det. Riehle asked Appellant how she got her aunt's credit card number. Appellant responded that her aunt had let her use it before. Appellant clarified that her aunt did not give her the credit card number but gave her the credit card itself. When asked how long ago that her aunt gave her the credit card, Appellant said her aunt had given it to her a lot of times, for the store or to read it for her. Det. Riehle asked Appellant if she had authorization from her aunt to "buy that stuff," Appellant responded, "I did not, no."

{¶11} After Det. Riehle's testimony, the State rested. Appellant moved for an acquittal pursuant to Crim.R. 29, which the trial court denied.

{¶12} Appellant testified in her own defense. She stated her aunt gave her permission to use her debit card in exchange for not going to the police about an incident that occurred during their July 2019 trip together. Her aunt had asked Appellant to link her debit card to the Uber Eats, Venmo, and Amazon accounts, which Appellant did while she was still with her aunt on the trip. The Venmo transaction for rent, however, was a mistake because Appellant did not realize which credit card she was using.

{¶13} At the conclusion of Appellant's case, the trial court found Appellant guilty on both counts. The trial court, without objection, moved directly to sentencing. The trial court first imposed a sentence of community control for two years. The trial court next discussed restitution. Appellant's aunt had left the courthouse before sentencing and was not available to give a statement as to restitution. The State provided the aunt's Victim Impact Statement that stated she was seeking restitution in the amount of $271.20. As part of her community control sanctions, the trial court ordered Appellant to pay restitution in the amount of $271.20 to her aunt.

{¶14} The trial court journalized its sentencing entry on March 24, 2021, from which Appellant now appeals.

## ASSIGNMENTS OF ERROR

{¶15} Appellant raises four Assignments of Error:

{¶16} "I. APPELLANT'S CONVICTION FOR TELECOMMUNICATIONS FRAUD WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} "II. APPELLANT'S CONVICTION FOR IDENTITY FRAUD WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶18} "III. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIM.R. 29(A).

{¶19} "IV. THE SENTENCE IS CONTRARY TO LAW AND NOT SUPPORTED BY THE EVIDENCE WITH RESPECT TO RESTITUTION."

## ANALYSIS

### I., II., and III.

{¶20} Appellant contends in her first and second Assignments of Error that her convictions for telecommunications fraud and identity theft were against the sufficiency and manifest weight of the evidence. In her third Assignment of Error, she argues the trial court erred when it denied her Crim.R. 29 motion for acquittal. Because the three Assignments of Error have related standards of review, we consider them together.

### Standard of Review

{¶21} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's

guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶22} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶23} The appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. *State v. Henderson*, 5th Dist. Richland No. 17CA104, 2019-Ohio-4958, ¶ 15 citing *State v. Larry*, 5th Dist. Holmes No. 15CA011, 2016–Ohio–829, ¶ 20 citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 1995–Ohio–104.

{¶24} Pursuant to these standards of review, we address Appellant's Assignments of Error. We note that at trial, Appellant did not dispute that she used her aunt's debit card to make the contested transactions. She further did not dispute she made the transactions with Uber Eats, Amazon, and Venmo using the internet. The issue before the trial court was simple: did the aunt give Appellant permission to use her debit

card for the contested transactions? With that narrow question in mind, we conduct our analysis.

## Telecommunications Fraud

{¶25} Appellant was convicted of telecommunications fraud in violation of R.C. 2913.05(A), which states:

> No person, having devised a scheme to defraud, shall knowingly
> disseminate, transmit, or cause to be disseminated or transmitted by means
> of a wire, radio, satellite, telecommunication, telecommunications device,
> or telecommunications service any writing, data, sign, signal, picture,
> sound, or image with purpose to execute or otherwise further the scheme
> to defraud.

The statute criminalizes the use of telecommunications in a scheme to defraud. *State v. Mock*, 2018-Ohio-268, 106 N.E.3d 154, ¶ 51.

{¶26} Appellant argues the State failed to meet its burden of proof on the element that she "devised a scheme to defraud." "Scheme" is defined as a "plan or program of action." Webster's Ninth New Collegiate Dictionary 1050 (1989). Under R.C. 2913.01(B), "defraud" "means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." Appellant contends the State provided no evidence to establish she obtained her aunt's debit card number as the aunt claims, from the iPad, or when the aunt gave Appellant the debit card while they were shopping or to pay for their meals at restaurants. By failing to show how Appellant obtained the debit card number, Appellant argues the State cannot establish a scheme to defraud.

{¶27} Appellant testified that she had her aunt's debit card number, and she placed the Uber Eats, Amazon, and Venmo transactions using her aunt's debit card number. The issue in dispute was whether she was permitted to use her aunt's debit card number for those transactions. In the recorded phone call between Det. Riehle and Appellant, Det. Riehle asked Appellant if she had authorization from her aunt to make the purchases. Appellant responded to Det. Riehle's question that she did not have her aunt's authorization to make the purchases with her aunt's debit card. At trial, Appellant stated she did not understand Det. Riehle's questions when she answered. She testified that her aunt gave her permission to use her debit card and her aunt had given her the debit card number. Appellant's aunt testified that she did not give Appellant her debit card number or permission to make those purchases with her debit card number. Because of the conflicting testimony by the only two witnesses involved in the transactions, the issue in this case comes down to the credibility of those witnesses, whether Appellant or her aunt is to be believed that Appellant did not have permission to use the debit card, thereby establishing a "scheme to defraud."

{¶28} The weight to be given the evidence introduced at trial and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982), syllabus. It is not the function of an appellate court to substitute its judgment for that of the factfinder. *State v. Jenks*, 61 Ohio St.3d 259, 279, 574 N.E.2d 492 (1991). Any inconsistencies in the witnesses' accounts were for the trial court to resolve. *State v. Dotson*, 5th Dist. Stark No. 2016CA00199, 2017-Ohio-5565, ¶ 49. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *State v.*

*Keller*, 5th Dist. Delaware No. 18CAA090075, 2019-Ohio-3857, at ¶ 29, citing *State v. Brindley*, 10th Dist. Franklin No. 01AP-926, 2002-Ohio-2425, ¶ 16. We defer to the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus.

{¶29} In this case, the trial court did not find Appellant's testimony credible that her aunt gave her permission to make the purchases with her debit card. The evidence produced at trial supports the fact finder's determination. Appellant's statements in the phone call conflicted with her statements at trial. When Appellant answered Det. Riehle's question on the phone whether she had her aunt's authorization to make the purchases, Appellant clearly replied to the question, "I did not, no." The weight and sufficiency of the evidence in this case showed that Appellant devised a scheme to defraud when she used her aunt's debit card number to conduct internet transactions with Uber Eats, Amazon, and Venmo.

{¶30} Appellant's first Assignment of Error is overruled.

### Identity Theft

{¶31} Appellant was also convicted of identity theft, in violation of R.C. 2913.49(B)(2). The statute reads:

(B) No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to do either of the following:

* * *

(2) Represent the other person's personal identifying information as the person's own personal identifying information.

"Personal identifying information" includes a "credit card number." R.C. 2913.49(A). A "credit card number" includes, "but is not limited to, a card, code, device, or other means of access to a customer's account for the purpose of obtaining money, property, labor, or services on credit, or for initiating an electronic fund transfer at a point-of-sale terminal, an automated teller machine, or a cash dispensing machine." R.C. 2913.01(U).

{¶32} As stated above, Appellant does not contest that she used her aunt's debit card number to make the transactions with Uber Eats, Amazon, and Venmo. The relevant element in this case is whether Appellant had "the express or implied consent of the other person" to use the credit card number. The trial court, as the fact finder in this case, did not find Appellant's testimony credible that she had the express or implied consent to use the aunt's debit card number. The weight and sufficiency of the evidence, as we analyzed above, supports the trial court's judgment that the aunt did not give Appellant express or implied consent to use her personal identifying information to make the transactions with Uber Eats, Amazon, and Venmo.

{¶33} Appellant's second Assignment of Error is overruled.

## Crim.R. 29

{¶34} In her third Assignment of Error, Appellant contends the trial court erred when it denied her Crim.R. 29 motion for acquittal. The standard of review for a Crim.R. 29 motion for acquittal employs the same standard used to review a sufficiency of the evidence claim. *State v. Henderson*, 5th Dist. Richland No. 17CA104, 2019-Ohio-4958, ¶ 15.

{¶35} Based on our analysis in the first and second Assignments of Error, we overrule Appellant's third Assignment of Error.

## IV.

{¶36} Appellant argues in her fourth Assignment of Error the trial court abused its discretion as to the amount of restitution. She contends if this Court upholds her convictions, her restitution should be modified to $185.89. We agree.

{¶37} We review restitution orders under an abuse-of-discretion standard. *State v. Hodge*, 5th Dist. Muskingum No. CT2019-0038, 2020-Ohio-901, ¶ 51 citing *State v. Sheets*, 5th Dist. Licking No. 17 CA 44, 2018-Ohio-996, 2018 WL 1358039, ¶ 15, citing *State v. Cook*, 5th Dist. Fairfield No. 16-CA-28, 2017-Ohio-1503, 2017 WL 1436377, ¶ 8; *State v. Andrews*, 5th Dist. Delaware No. 15 CAA 12 0099, 2016-Ohio-7389, 2016 WL 6138888, ¶ 40. This Court has held that an order of restitution must be supported by competent and credible evidence from which the trial court can discern the amount of restitution to a reasonable degree of certainty. *Hodge* at ¶ 51 citing *Sheets, supra*, citing *State v. Spencer*, 5th Dist. Delaware No. 16 CAA 04 0019, 2017-Ohio-59, 2017 WL 90619, ¶ 44 (citations omitted); *State v. Frank*, 5th Dist. No. CT2017-0102, 2018-Ohio-5148, 127 N.E.3d 363, ¶ 64. Furthermore, a trial court abuses its discretion if it orders restitution in an amount that does not bear a reasonable relationship to the actual loss suffered. *Id.* (citations omitted).

{¶38} At trial, the aunt testified she provided Det. Riehle with a statement from her PNC Bank account that showed the following unauthorized transactions:

July 17, 2019, Amazon, $150

July 17, 2019, Uber Eats, $1.49

July 17, 2019, Uber Eats, $17.20

July 17, 2019, Uber Eats, $17.20

The sum of the above numbers is $185.89.

{¶39} During sentencing, the trial court imposed restitution as part of Appellant's community control sanctions. At the time the trial court decided restitution, the aunt had left the courthouse. The State provided the aunt's Victim Impact Statement to the trial court, which it used to determine the restitution amount. The aunt's Victim Impact Statement requested $271.20 in restitution. There was no information in the Victim Impact Statement showing the basis for the aunt's restitution request of $271.20.

{¶40} Based on the conflicts between the evidence presented at trial and the Victim's Impact Statement, we find there was insufficient evidence to support restitution in the amount of $271.20. R.C. 2929.18(A)(1) states in pertinent part as to restitution:

Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. * * * If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court imposes restitution for the cost of accounting or auditing done to determine the extent of economic loss, the court may order restitution for any amount of the victim's costs of accounting or auditing

provided that the amount of restitution is reasonable and does not exceed the value of property or services stolen or damaged as a result of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount.

* * *.

{¶41} The State contends the language of the statute could be read to permit the use of a Victim Impact Statement as a "recommendation of the victim" to support the request for restitution. The language of R.C. 2929.18(A)(1) is clear, however, that "restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." The aunt testified at trial that there were unauthorized transactions in the amount of $185.89 but her Victim Impact Statement requested restitution in the amount of $271.20. There is an unexplained $85.31 difference between the evidence presented at the trial and the Victim Impact Statement. It appears from this record that the restitution ordered by the trial court exceeds the aunt's economic loss. The aunt may have suffered further economic loss from Appellant's actions, such as bank fees, but that evidence is not in this record.

{¶42} We find insufficient evidence to support the $271.20 restitution order. We sustain Appellant's fourth Assignment of Error and remand this matter for a restitution hearing. *State v. Hodge*, 5th Dist. Muskingum No. CT2019-0038, 2020-Ohio-901, 2020 WL 1170812, ¶ 54 citing *State v. LaFever*, 5th Dist. Morrow No. 2009CA0003, 2009-Ohio-5471, ¶ 28.

{¶43} Appellant's fourth Assignment of Error is sustained, the restitution order is reversed and vacated, and the matter is remanded for a restitution hearing.

## CONCLUSION

{¶44} The judgment of the Delaware County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded for further proceedings.

By: Delaney, J.,

Gwin, P.J. and

Wise, John, J., concur.