[Cite as *State v. Cruz*, 2023-Ohio-833.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2022CA00049 |
| | : | |
| FELIX PAGAN CRUZ | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Stark County Court of
                                Common Pleas, Case No. 2021CR1071


JUDGMENT:                       AFFIRMED


DATE OF JUDGMENT ENTRY:         March 16, 2023


APPEARANCES:


For Plaintiff-Appellee:                 For Defendant-Appellant:

KYLE STONE                              D. COLEMAN BOND
STARK CO. PROSECUTOR                    116 Cleveland Ave. NW
LISA A. NEMES                           Canton, OH 44702
110 Central Plaza South, Ste. 510
Canton, OH 44702-1413

*Delaney, J.*

{¶1} Appellant Felix Pagan Cruz appeals from the March 22, 2022 Judgment Entry of the Stark County Court of Common Pleas.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Appellant and Jane Doe, the mother of his children, speak limited English and Spanish is their first language. Interpreters were used throughout the court proceedings, including at trial. The following facts are adduced from the record of appellant's jury trial.

{¶3} Appellant and Jane Doe met and started a relationship in Puerto Rico and lived together for 13 years. They have two children together, ages 6 and 4 at the time of these events. Jane testified that the relationship became difficult beginning in 2017 but the two stayed together.  At some point appellant moved to Ohio.  In 2020, he encouraged Jane Doe to join him because both children are autistic and treatment options are better for the children in Ohio.

{¶4} Jane and the children moved to Ohio and at first lived in an apartment with appellant. In February 2021, appellant moved out and stayed with a friend in the same apartment complex but a different unit. Appellant came and went freely to Jane's apartment and was permitted to see the children whenever he wanted.

{¶5}  On May 16, 2021, Jane expected appellant to pick up the children at 8:00 a.m. She made breakfast and fed the children but appellant did not arrive. Sometime after 1:00 p.m., Jane messaged appellant on Facebook Messenger and asked why he didn't come that morning as planned. Appellant responded that he was still coming but did not say when.

{¶6}  Sometime around 2:00 p.m., Jane began cooking lunch for the children and heard a noise at the door; she saw appellant outside.  Jane described appellant's face as angry. As she opened the door for him, appellant took the cell phone from her hand and began beating her in the head with it until it broke, stating that it was "her fault."  Appellant threw the broken phone on the floor and continued beating Jane with his fists on her body and face.

{¶7}  Appellant pulled Jane's hair so hard that she fell on the floor. She laid on her back in the living room, near the front door, and appellant said, "You're going to see what happens now." Appellant approached the kitchen. In the meantime, the couple's 6-year-old autistic daughter was coming down the stairs. Jane got up from the floor and heard noises from the kitchen like "spoons and forks," as though appellant was rifling through silverware. Jane approached her daughter on the steps, with her back to appellant, because she was worried about what might happen next.

{¶8}  Appellant again said, "You're going to see what happens to you now," and as Jane turned toward him he stuck a knife in her right leg. Jane did not immediately notice pain from the wound and grabbed her daughter from the steps. Jane was afraid for herself and her daughter, who was screaming. Appellant again grabbed Jane's hair and she fell to the floor with her daughter in her arms. As Jane fell, appellant continued to punch and kick her.  Jane remained on the floor in the fetal position.

{¶9}  Appellant did not let Jane leave the apartment; she tried to crawl toward the kitchen door but appellant again grabbed her by the hair. Jane was afraid and asked appellant "Why?"  He responded that it was "her fault."

{¶10} Jane testified she was afraid for her life, and for her daughter's life.  Appellant said he wanted to take their daughter with him but Jane refused, making him angrier. Appellant asked Jane where the diapers were and she didn't answer, so he grabbed her work backpack. At that point, Jane saw a man outside through the glass apartment door.

{¶11} Appellant asked again where the diapers were, and Jane pointed.  At that moment, appellant was distracted and turned around, so Jane unlocked the door, opened it, and ran outside with her daughter.  The man she saw earlier was in a car, driving away, and Jane approached the car screaming "Help me" in Spanish.  Jane grabbed the car door and opened it, allowing the man to see the stab wound on her leg.  The man told her to get into the car, but Jane didn't want to leave her son behind in the apartment with appellant.[1]

{¶12} In the meantime, appellant came out of the apartment with Jane's work backpack, got in a car, and drove off. The man told her to go back in her apartment and lock the doors.  Jane went inside to check on her son.

{¶13} Jane further testified that she used her kids' phone to message someone whose name she did not want to reveal.[2] She asked this person to call police, and the person remained on the phone with her, encouraging her to cooperate with police.

{¶14} The first officer on the scene was Anthony Ankrom. Jane and Ankrom had difficulty communicating because of the language barrier.  She showed him the knife in

---

[1] Jane testified that throughout the incident, her son was in his bedroom on the second floor.

[2] The responding police officer testified the person Jane reached out to was a family member.

the sink that appellant stabbed her with. The knife and sink were wet; Ankrom and Jane both testified the knife was not bloody.

{¶15} Ankrom collected the knife and pants Jane was wearing as evidence and took photos of Jane's injuries. An ambulance arrived and someone on the scene spoke Spanish. Jane gave that person appellant's name, address, and description. The ambulance transported Jane and the children to the hospital. Jane testified that her injuries included bruises on her head and face, and the stab wound on her thigh which required stitches.

{¶16} When Jane left the hospital after 8 hours, she went directly to a shelter and then left the state with her children. Although Jane testified at trial and was cooperative with law enforcement, she declined to provide any further information about her whereabouts because she is in fear of appellant.

{¶17} Ptl. Ankrom testified that he was the first officer on the scene and found Jane upset and crying. Despite his difficulty communicating with Jane, her relative remained on the phone and acted as an interpreter. Ankrom's immediate concern was whether appellant was still on the scene. When he determined appellant was gone, Jane took him into the kitchen and picked up the knife out of the sink to show him. Ankrom told her to put it down and later collected the knife for evidence. Jane rolled up her pant leg and made a stabbing motion toward her leg; Ankrom observed a puncture wound consistent with a stab wound on her thigh and photographed the injury. Ankrom did not observe much blood from the injury and did not observe any blood on the knife or in the sink. Because the incident involved a stabbing, Ankrom contacted the Detective Bureau to take over the investigation.

{¶18} Detective Braswell took over and attempted to locate appellant. He responded to another building in the complex and spoke to appellant's friend whom he lived with. Braswell contacted Jane Doe in the hospital and found her distraught. Braswell observed a red mark to her right cheek and a stab wound to her right thigh. At some point Braswell spoke to appellant by telephone and attempted to interview him, but appellant said he didn't speak any English.

{¶19} Braswell sought warrants for appellant's arrest. Upon cross-examination, Braswell testified his investigation gave him no reason to believe Jane caused her own injuries. The shape of the stab wound, roughly a C- or L-shape, indicated the stabbing resulted from a "tussle" and not a quick in-and-out motion.

{¶20} Erin Crimaldi, a SANE nurse at Mercy Medical Center, examined Jane as part of her job providing medical attention for domestic violence victims.  Crimaldi testified at trial regarding her forensic record of Jane's treatment, noting she used an interpreter for her entire interaction with Jane.

{¶21} When Crimaldi encountered Jane, she was lying in a hospital bed, disheveled and upset, and her children were with her. Jane was grimacing and wincing in pain.  Crimaldi immediately observed bruising on her right cheek and a stab wound on her right thigh. Crimaldi's interaction with Jane included a medical forensic examination that included Jane's medical history and the history of the assault; Crimaldi documented the injuries and measured them. She offered Jane safety planning and a referral to community resources.

{¶22} Crimaldi described the stab wound as "fleshy and red;" it measured one and a half by one and a half centimeters and was shaped like the letter C or L.  The wound

was sutured by a doctor. Jane complained of a headache and said appellant struck her in the head with a cell phone and also hit and kicked her. Crimaldi described multiple areas of bruising and scratch marks, including red and blue bruising on Jane's right cheekbone which exhibited moderate swelling.

{¶23} Upon cross-examination, the defense asked Crimaldi about Jane's mental state and whether she was suicidal.  Crimaldi said Jane was upset and had a lot of stress and anxiety; when asked whether she thought about harming herself, she said she knew she could not kill herself because she needed to be present to care for her children. An ER doctor evaluated Jane and determined she was not suicidal. Jane did not have any further psychological recommendations.

{¶24} Crimaldi testified that Jane's examination and resulting referrals took around eight hours. Jane did not have a safety plan but told Crimaldi she wanted one. Jane and her children left the hospital for a safe alternative community resource.

{¶25} Alexis Dillard is an intake worker at Stark County Children's Services and interviewed Jane on May 18, 2021. Jane was fearful and in the process of packing her vehicle to leave the state. Dillard asked Jane about the bandage on her leg and Jane replied that she was stabbed. Dillard was unable to interview the children because they are autistic and nonverbal; they were "fussing" in the car as she spoke to Jane and Jane soothed them. The case was closed in July because the agency concluded Jane was appropriately protecting the children.

{¶26} Dillard interviewed appellant on May 24, 2021, in person, with an interpreter.  Appellant seemed "unbothered" by the incident and had no problem

CRUZ speaking to Dillard. After a sidebar discussion at trial, the parties stipulated that appellant admitted to Dillard that he struck Jane in the face.

*Arrest, indictment, substitution of counsel, and trial*

{¶27} Appellant was arrested on May 19, 2021, on charges of felonious assault and domestic violence. He did not post bond and remained in jail throughout the proceedings.

{¶28} Appellant waived his right to a preliminary hearing on May 25, 2021.

{¶29} On June 28, 2021, appellant was charged by indictment with one count of felonious assault pursuant to R.C. 2903.11(A)(D)(1)(a), a felony of the second degree; one count of abduction pursuant to R.C. 2905.02(A)(2)(C), a felony of the third degree; one count of domestic violence pursuant to R.C. 2919.25(A)(D)(2), a misdemeanor of the first degree; and one count of child endangering pursuant to R.C. 2919.22(A)(E)(2)(a), a misdemeanor of the first degree.

{¶30} On July 2, 2021, appellant appeared before the trial court and entered pleas of not guilty.

{¶31} On July 12, 2021, the parties appeared for a pretrial which was continued to July 19, 2021 upon order of the trial court.

{¶32} On July 19, 2021, the pretrial was continued to July 26, 2021, upon motion of defense trial counsel.

{¶33} On July 26, 2021, the pretrial was continued to August 9, 2021 upon motion of defense trial counsel. Also on that date appellant signed a time waiver.

{¶34} On August 3, 2021, the pretrial was continued to August 23, 2021 upon motion of defense trial counsel.

{¶35} On August 19, 2021, appellant filed a "Motion for Appropriation of Funds for an Expert Witness" moving the trial court to authorize payment of an expert in DNA and fingerprint analysis. The trial court granted the motion the same day. Also on that date, the trial court ordered the Stark County Sheriff to permit representatives of a DNA laboratory to collect a sample from appellant; ordered the Canton Police Department to transport the evidence (the knife) to the Stark County Crime Lab; and ordered the Stark County Crime Lab to undertake fingerprint analysis of the knife.

{¶36} On August 20, 2021, appellant filed a pro se motion to dismiss for failure to grant a speedy trial.

{¶37} On August 23, 2021, the trial court continued the pretrial to September 13, 2021, upon motion of appellant.

{¶38} On August 25, 2021, the trial court overruled appellant's pro se motion to dismiss, noting the following in the journal entry:

* * * *.

The Defendant was arrested on May 19, 2021 and arraigned on July 2, 2021. The Court had its initial pretrial on July 12, 2021. Due to the fact that the Defendant does not speak English, the Court had to make arrangements for an interpreter to appear and assist with the pretrial and explanation of Defendant's rights. An interpreter appeared at the pretrial on July 26, 2021. At that time Defendant's counsel indicated that the Defendant wanted to waive his speedy trial rights due to the fact that he was going to be requesting the Court to order DNA and fingerprint analysis. The Court went on the record

and explained the time waiver issue to the Defendant through the interpreter. The Defendant signed the time waiver indicating that he waived any and all rights under R.C. 2945.71. Shortly thereafter, the Court granted the Defendant's request that any pretrial and trial dates be continued due to the fact that the Defendant was requesting the Court for funding [*sic*] and an order to have experts review the evidence of the DNA and fingerprint analysis. On August 23, 2021 the Court again made arrangements for an interpreter to appear at the pretrial, explaining to the Defendant though [*sic*] the interpreter the process of the case and reaffirming that the time waiver had been signed by him, as well as his attorney. As soon as the results are provided to the Court regarding the DNA and fingerprint analysis, another pretrial will be set and a trial date will be scheduled if necessary.

Since the Defendant voluntarily signed the time waiver and has also requested the continuance to gather further evidence, the Court hereby denies his motion to dismiss the case for speedy trial rights violations.

\* \* \* \*.

{¶39} On September 13, 2021, the pretrial was continued to October 4, 2021 upon motion of appellant.

{¶40} On October 4, 2021, the pretrial was continued to October 25, 2021 upon motion of appellant. Also on that date, appellant filed a motion to authorize expenditures

for an interpreter to translate the discovery documents into Spanish for appellant's review. The trial court granted the motion the same day.

{¶41} On October 25, 2021, the pretrial was continued to November 29, 2021, upon motion by appellant.

{¶42} On November 4, 9, and 12, appellant filed various pro se motions asking for a speedy trial and a preliminary hearing.

{¶43} On November 18, 2021, appellant filed a pro se motion for a bond reduction hearing.

{¶44} On November 29, 2021, a pretrial was held and the matter was scheduled for jury trial on January 25, 2022.

{¶45} On December 8, 2021, the trial court granted appellant's motion for expert witness fees for a DNA analyst who examined the knife.

{¶46} On December 14, 2021, a pretrial was scheduled for December 20, 2021.

{¶47} On December 9, 2021, appellant filed a pro se motion entitled "Filing for New Counsel Because My Lawyers Ineffective" (*sic*).

{¶48} On December 23, 2021, via defense trial counsel, appellant filed his reciprocal discovery response.

{¶49} On January 4, 2022, defense trial counsel filed a motion to withdraw, citing a "complete breakdown" in the attorney-client relationship.

{¶50} On January 7, 2022, the trial court scheduled a pretrial for January 10, 2022.

{¶51} On January 10, 2022, the trial court scheduled a pretrial for January 24, 2022. Also on January 10, 2022, appellant filed a pro se "Motion to Withdraw Counsel" and the trial court appointed new defense trial counsel to represent appellant.

{¶52} On January 24, 2022, the jury trial was continued upon appellant's motion to March 8, 2022.

{¶53} On March 7, 2022, (substitute) defense trial counsel filed a motion in limine to exclude any mention of appellant's criminal record from trial.

{¶54} On March 8, 2022, appellant's trial by jury commenced, concluding on March 11, 2022. Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) at the close of appellee's evidence and the motion was overruled. Appellant rested without presenting evidence. Appellant was found not guilty upon Count I, felonious assault, and was found guilty upon the remaining charges (Count II, abduction; Count III, domestic violence; and Count IV, child endangering). The trial court deferred sentencing until March 18, 2022.

{¶55} On March 18, 2022, the trial court sentenced appellant to a prison term of 24 months upon Count II, to be served concurrently with jail terms of 30 days each upon Counts III and IV.

{¶56} Appellant now appeals from the trial court's judgment entry of conviction and sentence dated March 25, 2022.

{¶57} Appellant raises four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶58} "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTIONS AGAINST THE APPELLANT, AND THE CONVICTIONS MUST BE REVERSED."

{¶59} "II. THE APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

{¶60} "III. THE APPELLANT WAS NOT BROUGHT TO TRIAL WITHIN A REASONABLE TIME AFTER HE REVOKED HIS TIME WAIVER BY FILING FORMAL WRITTEN COMPLAINT AND DEMAND FOR TRIAL, AND AS SUCH HIS CONVICTIONS MUST BE REVERSED DUE TO VIOLATION OF HIS RIGHTS TO SPEEDY TRIAL."

{¶61} "IV. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION BECAUSE HIS TRIAL COUNSEL FAILED TO RENEW AND/OR RAISE A MOTION TO DISMISS FOR LACK OF A SPEEDY TRIAL."

**ANALYSIS**

I., II.

{¶62} Appellant's first and second assignments of error are related and will be considered together. He argues his convictions of abduction and child endangering are not supported by sufficient evidence and are against the manifest weight of the evidence.[3] We disagree.

{¶63} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence

---

[3] Appellant does not challenge his conviction upon Count III, domestic violence.

to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶64} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶65} Sufficiency of the evidence is a legal question dealing with whether the state met its burden of production at trial. *State v. Murphy,* 5th Dist. Stark No. 2015CA00024, 2015-Ohio-5108, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Murphy* at ¶ 15. The test for sufficiency of the evidence raises a question of law and does not permit the court to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The relevant

inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Murphy* at ¶ 15, citing *Thompkins* at 386.

{¶66} Appellant challenges his conviction upon one count of abduction pursuant to R.C. 2905.02(A)(2), which states, "No person, without privilege to do so, shall knowingly * * * [b]y force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear." Appellant also challenges his conviction upon one count of child endangering pursuant to R.C. 2919.22(A), stating in pertinent part, "No person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * * *."

{¶67} We have reviewed the record for evidence supporting appellant's abduction conviction. Appellee presented evidence in the form of Jane Doe's testimony that she was trapped in the apartment by appellant's actions; when she attempted to reach the door, he pulled her down by her hair. Jane testified appellant did not let her leave; she tried to crawl toward the door but he pulled her down by her hair. T.I, 44. After she saw someone outside and again tried to get to the door, appellant again pulled her down by her hair.  T.I, 46.  Jane repeatedly testified she was in fear throughout the assault, for her own life and the life of her child.  T. I, 42, 44-45, 49.

{¶68} Appellant argues Jane Doe's testimony alone was insufficient to prove abduction, but the testimony of one witness, if believed by the jury, is enough to support a conviction. *State v. Dunn*, 5th Dist. Stark No. 2008-CA-00137, 2009-Ohio-1688, ¶ 133. Appellant further argues that appellant never told her she couldn't leave and eventually

she did in fact leave. Jane testified, though, that appellant repeatedly threatened her and pulled her back to the ground when she tried to reach the door; it was only when he was momentarily distracted that she was able to exit the apartment.

{¶69} Regarding appellant's conviction of child endangering, Jane testified her daughter was coming down the steps and began screaming as the assault began. Appellee presented evidence in the form of Jane's testimony that she was holding her daughter as most of the assault took place, including when she was on the floor as appellant hit and kicked her. T.I, 42-43, 45, 48. Jane testified "a long time" passed between appellant leaving the apartment and her contact with Ankrom, therefore appellant's argument that the children seemed calm when Ankrom saw them is unavailing. T.I, 51-52. Communication between Jane and Ankrom was limited due to the language barrier, and Ankrom testified he "didn't recall" the presence of the children at first. T.I, 72. It was Braswell who filed the charges against appellant and he had the benefit of an interpreter when interviewing Jane. T. 110.

{¶70} It is axiomatic that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough,* 95 Ohio St.3d 227, 231, 2002-Ohio-2126, 767 N.E.2d 216. The trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. In the instant case, the jury was able to hear Jane's testimony and observe the photos documenting her injuries, and to hear from the other witnesses including the SANE nurse, the children's services intake worker, and the investigating detective.

{¶71} We further note the jury found appellant not guilty of felonious assault, indicating they were capable of weighing the evidence and finding some to be in appellant's favor. Any inconsistencies in the evidence were for the trial court to resolve. *State v. Dotson*, 5th Dist. Stark No. 2016CA00199, 2017-Ohio-5565, 2017 WL 2815197, ¶ 49. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *State v. Brindley,* 10th Dist. Franklin No. 01AP-926, 2002-Ohio-2425, 2002 WL 1013033, ¶ 16.

{¶72} After weighing the evidence and evaluating the credibility of the witnesses, with appropriate deference to the trier of fact's credibility determination, we cannot say that the jury clearly lost its way and created a manifest injustice in convicting appellant of abduction and child endangering. Construing all the evidence in favor of appellee, sufficient evidence supports appellant's convictions upon Counts II and IV. Also, this is not the case in which the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be overturned, and a new trial ordered. Appellant's convictions are not against the manifest weight of the evidence.

{¶73} Appellant's first and second assignments of error are overruled.

III.

{¶74} In his third assignment of error, appellant argues he was deprived of his right to a speedy trial, despite his acknowledgment that he executed an unlimited time waiver. We disagree.

{¶75} Speedy trial provisions are mandatory and are encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a

person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. *State v. Ladd,* 56 Ohio St.2d 197, 200, 383 N.E.2d 579 (1978); *State v. Pachay,* 64 Ohio St.2d 218, 219, 416 N.E.2d 589 (1980). Our review of a trial court's decision regarding a motion to dismiss based upon a violation of the speedy trial provisions involves a mixed question of law and fact. *State v. Larkin,* 5th Dist. Richland No. 2004-CA-103, 2005-Ohio-3122, 2005 WL 1463255, ¶ 11. Due deference must be given to the trial court's findings of fact if supported by competent, credible evidence. Id. However, we must independently review whether the trial court properly applied the law to the facts of the case. *Id.* Furthermore, when reviewing the legal issues presented in a speedy trial claim, an appellate court must strictly construe the relevant statutes against the state. *Brecksville v. Cook,* 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996).

{¶76} Appellant was charged with felony offenses. A person charged with a felony must be brought to trial within 270 days unless the right to a speedy trial is waived. R.C. 2945.71(C)(2). Pursuant to R.C. 2945.73, a person who is not brought to trial within the proscribed time periods found in R.C. 2945.71 and R.C. 2945.72 "shall be discharged" and further criminal proceedings based on the same conduct are barred.

{¶77} If a person is held in jail in lieu of bond, then each day that the suspect is in custody counts as 3 days. R.C. 2945.71(E). Appellant remained incarcerated throughout the proceedings. Pursuant to R.C. 2945.71(C)(2), appellee had 270 days to try appellant, subject to the triple-count provision of 2945.71(E) and barring any tolling events [90 days].

{¶78} The time requirements within which an accused must be brought to trial may be tolled by certain events listed in R.C. 2945.72. Specifically, the speedy trial period

may be tolled for "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused[.]" R.C. 2945.72(E). R.C. 2945.72(H) provides the time within which an accused must be brought to trial may be extended by the period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion.

{¶79} Additionally, relevant to the instant case, an accused may waive his rights to a speedy trial, so long as the waiver is knowingly and voluntarily made. *State v. O'Brien*, 34 Ohio St.3d 7, 9, 516 N.E.2d 218 (1987), citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Such a waiver must be in writing or expressly made on the record in open court. *State v. King*, 70 Ohio St.3d 158, 637 N.E.2d 903 (1994), syllabus, citing *O'Brien,* supra, and *State v. Mincy*, 2 Ohio St.3d 6, 441 N.E.2d 571 (1982).

{¶80} A time waiver may be limited or unlimited in duration. "[A] waiver that expressly waives the accused's right to a speedy trial under the statute without mentioning a specific time period is unlimited in duration." *State v. Kovacek*, 9th Dist. Lorain No. 00CA007713, 2001 WL 577664, *4 (May 30, 2001), citing *O'Brien,* supra, 34 Ohio St.3d 7, 516 N.E.2d 218, at paragraph two of the syllabus. Once an accused has executed an express, written waiver of unlimited duration, "the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection and demand for trial, following which the state must bring the accused to trial within a reasonable time." *O'Brien,* supra, 34 Ohio St.3d 7, 516 N.E.2d 218 at paragraph two of the syllabus; *State v. Battle*, 5th Dist. Morgan No. 09 AP 0001, 2010-Ohio-4327, 2010

WL 3554870, ¶ 77, appeal not allowed, 127 Ohio St.3d 1533, 2011-Ohio-376, 940 N.E.2d 987, and cert. denied, 565 U.S. 861, 132 S.Ct. 200, 181 L.Ed.2d 106 (2011).

{¶81} In the instant case, appellant concedes that he executed an unlimited time waiver on July 26, 2021, in open court, with the assistance of an interpreter, and while represented by counsel. Brief, 23. Appellant does not assert that this waiver was unknowingly or involuntarily made. See, *State v. Miller*, 5th Dist. No. 2017CA0002, 2017-Ohio-5728, 94 N.E.3d 980, ¶ 28.

{¶82} However, appellant asserts that his pro se filings of November 4, 9, and 12, 2021, constitute a "formal written objection and demand for trial" pursuant to *O'Brien*, supra. At all times during proceedings before the trial court, appellant was represented by counsel. As detailed supra in the statement of facts, (original) defense trial counsel worked to get experts appointed on appellant's behalf to examine the knife allegedly used in the assault for fingerprints and DNA evidence. Appellant's defense at trial, after appointment of substitute counsel, was that appellant admitted striking Jane Doe but denied stabbing her, implying she stabbed herself. DNA and fingerprint analysis were essential to this defense because testing indicated there were no fingerprints of value and no DNA on the knife. The jury did in fact acquit appellant of felonious assault.

{¶83} Returning to the issue of the time waiver, appellant filed his various pro se motions while he was represented by counsel, and the pro se filings were therefore without effect. There is no indication from the record that counsel joined in or adopted the filings. A criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel, but these two rights are independent of each other and may not be asserted simultaneously. *State v. Martin*, 103 Ohio St.3d 385,

2004-Ohio-5471, 816 N.E.2d 227, ¶ 32, citing *Parren v. State*, 309 Md. 260, 269, 523 A.2d 597 (1987). The Ohio Supreme Court has held that "[n]either the United States Constitution, the Ohio Constitution, nor case law mandates * * * hybrid representation." *State v. Morrison*, 5th Dist. Guernsey No. 11-CA-29, 2012-Ohio-2154, ¶ 15, citing *McKaskle v. Wiggins,* 465 U.S. 168 [104 S.Ct. 944, 79 L.Ed.2d 122 (1984) ].

{¶84} While appellant was represented by counsel, the trial court could not entertain motions filed by appellant pro se. See *State v. Tenace*, 109 Ohio St.3d 451, 2006–Ohio–2987, 849 N.E.2d 1, ¶ 10. As the Ohio Supreme Court explained: "A defendant has no right to a 'hybrid' form of representation wherein he is represented by counsel, but also acts simultaneously as his own counsel." *State v. Keenan,* 81 Ohio St.3d 133, 138, 1998-Ohio-459, 689 N.E.2d 929. Appellant was frustrated with his original defense trial counsel because he believed the case proceeded too slowly, but counsel explained at every pretrial that the expert analysis appellant requested was essential to his defense and took time. The trial court also explained the time delays in its entry of August 25, 2021, overruling appellant's pro se motion to dismiss.

{¶85} We therefore decline to accept appellant's pro se filings as a "formal written objection and demand for trial" pursuant to *O'Brien,* supra. At the pretrial on August 23, 2021, the trial court noted defense trial counsel asked for expert analysis of the knife and the case would be continued for purposes of DNA analysis. The trial court further noted that appellant wanted the trial scheduled as soon as the DNA results were available, the pretrial was continued at appellant's request, and the status of the case would be addressed in three weeks. T. 3-4. At the pretrial on September 13, 2021, the trial court again noted the expert analysis was not complete and the matter would be continued for

another three weeks. T. 7. We further note appellant requested that all of the discovery he was entitled to should be translated into Spanish so he could understand what he was reading. The trial court agreed and continued the pretrial until October 4, 2021. At that time, the trial court noted it had ordered the translation of all police reports into Spanish for appellant's benefit. Defense counsel noted the Stark County Crime Lab had concluded there were no fingerprints of value on the knife, but appellant wanted the knife sent to his own expert for DNA analysis. The matter was therefore continued until October 25, 2021, at which time the trial court noted the DNA analysis was not yet complete. It was not until a pretrial on December 20, 2021, that defense counsel noted the test results were complete and no fingerprints or DNA were found on the knife. At that point, appellant was requesting new counsel, which the trial court initially denied because the trial date was scheduled for January 25, 2022. However, on January 10, 2022, the trial court reconsidered because appellant filed a grievance against his original counsel and the trial court determined communication had irretrievably broken down. New counsel was appointed, but the trial court noted counsel could not be ready by January 25 and the trial began on March 8.

{¶86} Even if we were to set aside appellant's time waiver, time is also tolled by motions instituted by the accused, R.C. 2945.72(E), and by the period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion. R.C. 2945.72(H). The trial court copiously documented that each pretrial was continued because of the appellant's request for expert testing of the knife, and the trial was continued because of appellant's request for appointment of new trial counsel.

{¶87} Appellant's arguments that his time waiver should be set aside and that his speedy-trial rights were denied are not well-taken and his third assignment of error is overruled.

IV.

{¶88} In his fourth assignment of error, appellant argues replacement defense trial counsel was ineffective in failing to move to dismiss the case on speedy-trial grounds. We disagree.

{¶89} A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). In an effective assistance analysis, we must determine whether counsel's assistance was ineffective, i.e., whether counsel's performance fell below an objective standard of reasonable representation and violated any of his essential duties to the client. *Id.* If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. *Id.* This requires a showing there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

{¶90} Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 693 N.E.2d 267 (1998). Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶91} Appellant signed a counseled unlimited speedy trial waiver on July 26, 2021. "[T]the speedy trial time period does not run when the defendant knowingly and

voluntarily waives their speedy trial rights." *State v. Hopings,* 6th Dist. Lucas No. L-20-1075, 2022-Ohio-1532, ¶ 57, citing *State v. Blackburn,* 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, ¶ 17-22. As we found supra in our discussion of the third assignment of error, appellant effectively waived time. Defense counsel moving for a dismissal on speedy trial rights would have been futile given the waiver. *Mansfield v. Feagin,* 5th Dist. Richland No. 2021 CA 0064, 2022-Ohio-2207, ¶ 26, *appeal not allowed,* 168 Ohio St.3d 1419, 2022-Ohio-3752, 196 N.E.3d 856.

{¶92} Appellant's fourth assignment of error is overruled.

## CONCLUSION

{¶93} Appellant's four assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.